## Case No. 18,117.

### In re WYNNE.

[Chase, 227; [1] 9 Am. Law Reg. (N. S.) 627; 4 N. B. R. 23 (Quarto, 5); 2 Am. Law T. Rep. Bankr. 116.]

Circuit Court, D. Virginia. May, 1868.

BANKRUPT PROCEEDING—DEED OF TRUST—VALIDITY—CHANGE OF SECURITIES—KNOWLEDGE OF INSOLVENCY ACT OF 1867—TIME OF TAKING EFFECT—LANDLORD'S LIEN.

1. A mortgage or other conveyance made as a security for a debt evidenced by a note or word, will operate as a security for the same continuing debt, though the evidence of it be changed by renewal or otherwise.

2. But if one deed of trust be executed as a substitute for a preceding one, the former will at once cease to have any validity or effect.

3. An assignee takes the property in the same plight in which it was held by the bankrupt when his petition was filed, subject to such liens or incumbrances as would affect it if no adjudication in bankruptcy had taken place; but the assignee represents the rights of creditors as well as the rights of the bankrupt; and any lien or incumbrance which would be void for fraud as against creditors, if no petition had been filed or assignee appointed, will be equally void as against the general creditors represented by the assignee.

[Cited in Harvey v. Crane. Case No. 6,178; Re Lake. Id. 7,992; Phelps v. Sellick. Id. 11,079; Re Smith. Id. 12,990; Edmondson v. Hyde, Id. 4,285; Re Duncan. Id. 4,131; St. Helen Mill Co., Id. 12,222; Re Baker, Id. 762; Curry v. M'Cauley. 11 Fed. 368; Taylor v. Irwin. 20 Fed. 617.]

[Cited in brief in Edwards v. Entwisle, 2 Mackey. 47. Cited in Southard v. Benner, 72 N. Y. 428.]

4. When the question is as to the effect of a proceeding instituted on the same day on which an act affecting the validity of such proceeding was passed, the precise time at which the act became a law may be properly inquired into.

[Cited in Salmon v. Burgess, Case No. 12,262; American Wood Paper Co. v. Glen's Falls Paper Co., Id. 321a; Maine v. Gilman, 11 Fed. 216.]

5. Though the bankrupt act purports to have been approved March 2, 1867, yet, as that day was Saturday, and it did in fact embrace Sunday and Monday, the bankrupt act did not become a law until the latter day.

6. Consequently, a deed of trust which was recorded on March 2, 1867. is not avoided by the bankrupt act [of 1867 (14 Stat. 517)].

7. Nothing in the thirty-fifth section of the bankrupt act affecting a deed, it may well be doubted whether, if the bankrupt act have been

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

approved before the recording of it, its effect would have been altered.

8. It seems that as the Virginia statute against fraudulent conveyances avoids all deeds of trust as to creditors until and except from the time they are duly admitted to record, the assignee in bankruptcy would receive the benefit of that statute, and would take the property free from all claims under such deeds.

[Cited in Curry v. M'Cauley. 11 Fed. 368: Johnson v. Patterson, Case No. 7,403.]

9. It cannot be held that all mortgages or other securities not expressly included in the first clause of the second general proviso in the fourteenth section of the bankrupt act are invalidated by that act. To hold such to be the law would give to the act an ex post facto operation.

10. A deed of trust is made on December 8, 1866, and is recorded March 2, 1867. The recording of the deed can not be held to be an act of bankruptcy, that being altogether the act of the party. So far as the grantor is concerned, whatever consequences flow from his act, must attach to the act of making the deed on December 8, 1866.

[Cited in Cragin v. Carmichael, Case No. 3,-319; Pattee v. Coggeshall, Id. 11,322; Harris v. Exchange Nat. Bank, Id. 6,119; Re Oliver. Id. 10,492; Clark v. Hezekiah. 24 Fed. 667; Laughlin v. Calumet & C. C. & D. Co., 13 C. C. A. 6, 65 Fed. 445.]

[Cited in brief in Gilbert v. Vail, 60 Vt. 263, 14 Atl. 543.]

11. Nor is it to be regarded as a deed executed on the day of its recordation, and therefore as a deed creating a preference on that day, as against creditors.

12. It is as much the policy of the bankrupt act to uphold liens and trusts when valid, as it is to set them aside when invalid.

[Cited in Darby v. Boatman's Sav. Ins., Case No. 3,571.]

13. It seems that knowledge that a party is embarrassed in carrying out his business for want of means, is not sufficient to fix on a grantee in a trust deed knowledge of his insolvency, if he fully believed that his property is more than sufficient to pay all his debts.

[Cited in Goldsworthy v. Roger Williams Nat. Bank, 15 R. I., 591, 10 Atl. 635.]

14. No lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed in bankruptcy, though in cases where jurisdiction has been previously acquired by state courts of a suit brought in good faith to enforce a valid lien upon property, such jurisdiction will not be divested.

[Cited in The Raleigh, Case No. 11,539. Followed in Re Bowne, Id. 1,741. Cited in Markson v. Heaney. Id. 9,098; Olney v. Tanner, 10 Fed. 108.]

15. A lien is given to a landlord, of a high and peculiar character, by section 12, c. 128. Code Va. (Ed. 1868).

[Followed in Re Bowne, Case No. 1,741.]

16. The landlord's lien under that statute, is given by the statute, independently of proceedings by distress warrant, or attachment, which are remedies, in case of a bankrupt, superseded by the effect and operation of the bankrupt act.

[Cited in Re Trim, Case No. 14,174; Re Butter, Id. 2,236; Bailey v. Loeb, Id. 739. Followed in Re Bowne. Id. 1,741.]

[Appeal from the district court of the United States for the district of Virginia.]

Wynne executed a deed of trust in August, 1866, to secure certain debts due to Enders, Paine & Williams. and this deed was at the time of its execution delivered to the latter,

but never recorded by them. Afterwards, in December, 1866, Wynne made another deed for the benefit of the same parties to secure the same debts as were secured by the unrecorded deed of August, which deed was likewise delivered to the qui trusts and held by them until Saturday, March 2, 1867, when it was recorded at their instance at four o'clock p. m. The congress had during the preceding session been considering the bill entitled "An act to provide a uniform system of bankruptcy," and its sittings terminated by law on Monday, March 4, 1867, at noon. It appears from the statutes at large, that the bankrupt bill became a law by approval of the president on Saturday, March 2, 1867, while the official records of the congress shows that the sitting of March 2 extended through Sunday, March 3, until Monday, March 4, at noon, and that the fact of the president's approval of the bill was communicated to the senate after nine forty a. m. Monday. In this state of doubt as to when the law went into operation, Wynne was adjudicated a bankrupt on the petition of Wheelwright, Mudge & Co., on June 8, 1867, and June 10, ten days after, Haxall, the landlord of Wynne, levied a distress by warrant for rent in arrear on the goods on the premises, and on July 18, of the same year, he levied another distress by warrant on the same goods for rent which would become due on January 1, 1868, the law of Virginia allowing distraint for rent whenever due during the current year of the tenancy, under certain circumstances. Whereupon the contention arose between the general creditors who claimed that the Enders, Paine & Williams trust deed was void, being contrary to the provisions of the bankrupt law, and that Haxall could acquire no lien by virtue of a distraint made after the adjudication of bankruptcy, and consequently, as they asserted, there being no liens on Wynne's property, it must all be divided equally. The trust deed creditors claimed that they held a lien dating from August, 1866, or at least from December, 1866, and that it could in no wise be affected by the bankruptcy law, for the reason that the deed was valid in itself, and the law was not in fact passed until Monday, March 4, 1867, notwithstanding the official statute book stated that it had passed on Saturday, March 2, and the landlord asserted that his lien for rent by the law of Virginia was prior to all other liens, and that it was as perfect and complete without distraint as with it, and therefore he was entitled to be first paid, even if his distraint was void because made after the adjudication of bankruptcy.

On this state of the case, Johns, the assignee of Wynne, filed his petition in the district court for instructions as to the distribution of the funds in his hands, from whence the cause came up to be heard in this court.

30 Fed. Cas.—48

Ould & Carrington, for deed of trust creditors.

Page & Murrey, for landlord.

John Howard, for general creditors.

Ould & Carrington, for deed of trust creditors.

This case comes before the court on the application of John Johns, Jr., assignee of Charles H. Wynne. In view of the conflicting claims upon the property of the bankrupt, the assignee asks for instructions from the court as to the priorities of the litigating parties. The indebtedness of Wynne, by the deed of the deed of trust creditors, existed as early as August, 1866. In that month a deed of trust was made to secure them, though that deed was never recorded. A subsequent deed was made on December 8, 1866, which was recorded on March 2, 1867. The deed of August, 1866, as well as that of December, 1866, was a preference in favor of certain creditors, which it was competent for Wynne to make, under the well-settled law of Virginia. This is not disputed by the other side. It could not be under the repeated decisions of the courts. Even if the grantor was in failing circumstances or insolvent, such a preference could have been made. But at the time of the deed of August, 1866, no one pretends that Wynne was in failing circumstances or insolvent. His difficulties came upon him after that time. Under the well-settled law of Virginia, the renewal of a note is only an extension of credit for the former debt, and if the first note is secured by a deed of trust, the renewal note is also secured by the same deed, even if there is no express provision as to renewals. See Farmers' Bank v. Mutual Assur. Soc., 4 Leigh, 69. The real date, therefore, of the preference in this case in favor of Enders, Paine & Williams is August, 1866, and not December, 1866. And if the circumstances of the party making the conveyance become a material inquiry in this case, his condition in August would be the test. So if the knowledge of the preferred creditors is a material point, then the information they had in August when they accepted the preference, would be the real subject of inquiry. In other words, the preference in this case was not given in December, 1866, but in the August preceding, and the deed of trust of December was but a continuation and renewal of the preceding preference. The reason why the deed of August was not recorded, and why another deed was prepared and subsequently recorded, is fully explained in the answers of Enders and Paine, and not substantially controverted. According to our view of the case, it is not material whether the preference was made in August or December, as we hold that in either case it was valid. But in some of the aspects presented by the other side, it may become material to determine the true date of the preference,

and in that view we insist that the true date is August, 1866. We trust we will subsequently show that a preference does not depend upon an act of recordation, and that it is as fully made without recordation as with it. The answers of the several deed of trust creditors set forth under oath that they had the most perfect faith and confidence in the ability and solvency of said Wynne at the time of execution of the said deeds, and at the time that the deed of December 8 was recorded, and that they were at liberty at any time to record the said deeds. The reasons why the deed was not recorded are set forth. We submit that there is nothing in the proofs in this case to controvert these answers. But we hold that even if this is not the fact, their creditors are entitled to the lien of the conveyance in their favor. If the facts are in accordance with these answers, of course the case is with these deed of trust creditors. The first material inquiry is, whether the deed of December, 1866, is avoided by any provision of the bankrupt act.

We admit that there is one class of conveyances which are avoided by the provisions of the bankrupt law, whether they are made before or after the passage of the bankrupt act. They are those conveyances named in the fourteenth section of that act: "All the property, conveyed by the bankrupt in fraud of his creditors * * * shall in virtue of the adjudication in bankruptcy, and the appointment of his assignee, be at once vested in such assignee." Judge McDonald, in the case of Bradshaw v. Klein [Case No. 1,790], thus accurately states the law: "On the whole, I conclude that an assignee in bankruptcy may maintain an action to set aside fraudulent conveyances made by the debtor before he is adjudged a bankrupt, and even before the bankrupt act was passed, provided the person to whom the transfer was made was a party to the fraudulent intent, or received the transfer without valuable consideration." But in order to bring the case within this fourteenth section, the conveyance must be fraudulent in fact. A mere preference by an insolvent debtor is not a fraud. It has never been so held. After the passage of the bankrupt act, all such preferences are made illegal and void, it is true, but they have never been held to be fraudulent in fact. Hence Judge McDonald makes it as an essential ingredient of fraudulent conveyances, that there should not only be a fraudulent purpose on the part of the grantor, but that the person to whom the transfer was made was a party to the fraudulent intent, or received the transfer without valuable consideration." Now, there is no pretense that Enders & Co. were parties to any fraudulent intent, or that they received the transfer without valuable consideration. The transaction was the same that at that time was occurring daily in every county in the state to wit, a

bona fide indebtedness, and a deed of trust to secure the creditors.

Nor was this deed of trust obnoxious to any other provision of the bankrupt act. The thirty-fifth section only reaches frauds on the bankrupt law, and therefore can only refer to preferences made after the passage of the act. Judge McDonald, in the case already cited, so expressly decides. He says that while the fourteenth section refers to conveyances which are fraudulent under state statutes, and which may therefore extend to acts done before the passage of the bankrupt law, the thirty-fifth section only relates to acts which that section denounces, and that therefore it can only refer to preferences made after the passage of the act. The most cursory reading of the section, must satisfy any one that such is its meaning. The acts denounced are those "made in fraud of the provisions of this act," or done "with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act." How could such phraseology possibly apply to an act done or a conveyance made before the passage of the law? How could a conveyance be made "with a view to prevent his property from coming to his assignee," before any law was passed authorizing an assignee? How could a conveyance be "made in fraud of the provisions of an act," before that act was passed? How could a conveyance be made "with a view to prevent his property from being distributed under this act," before there were any provisions of law enacted, regulating distribution? Moreover, this thirty-fifth section only makes preferences void, where the creditor has reasonable cause to believe the debtor insolvent. This is utterly denied by the creditors, and is, we submit, not proved by the testimony. But even if this is not so, the case would not be altered. But it is contended that as the deed of trust was recorded on March 2, that being the day of the approval of the bankrupt act, such recordation is within the meaning and scope of the thirty-fifth section. It is alleged that as the act was approved on March 2, 1867, it brings within its scope any and every act done on that day. We will examine this position hereafter in the argument, and at present confine ourselves to the discussion of the very narrow question, whether the recordation on March 2 of a deed previously made, is denounced by the thirty-fifth or any other section of the bankrupt act. The statement of such a position, shows its utter absurdity. The only acts denounced by the thirty-fifth section are attachments, payments, pledges, assignments, transfers, and conveyances. Does the recordation of a security come under either one of these heads? Is it an attachment, or a payment, or a pledge, or an assignment, or a transfer, or a conveyance? Is it even a preference? Certainly not. The preference, the assignment, the transfer, the conveyance, was made in December previous, and as we have before

shown, is not within the scope of the thirty-fifth section. In other words, this thirty-fifth section does not impose any penalty upon the recordation of a conveyance, but does impose a penalty upon the making of the conveyance under a given state of facts. Its purpose and intent were to prevent the debtor from making assignments under certain circumstances, from and after the passage of the act. The deed of trust was no more of an assignment or conveyance after it was recorded, than it was before. It was just as much a preference or conveyance on December 8, 1866, as it was on March 3, 1867, after its record. Recording neither makes nor unmakes an instrument. It only renders void certain acts of the debtor, and does not relate to any act to be done by the creditor. If it had been the purpose of congress to render void an act already done—if it had been its intent to prevent a creditor from recording a deed already executed, there would have been some explicit mention of such purpose and intent on the face of the act.

The force of the argument that the thirty-fifth section only refers to the acts of preference on the part of the debtor is so keenly felt, that the opposing counsel have been compelled to take the position that the recording of the deed by the creditor is an act of the debtor. The extraordinary ground is taken that a creditor records a deed given in his favor, by virtue of a verbal irrevocable power of attorney. If this position was correct, it would not meet the case, for the thirty-fifth section not only relates to some acts of the debtor, but particularly specifies what they are. It must be a payment, pledge, assignment, transfer, or conveyance. If the recording of a deed by a creditor is in law and fact the act of the debtor, is it such a particular act as is named in the section? Is it a payment, pledge, assignment, transfer, or conveyance? Certainly and clearly not. So that if the opposing counsel were to succeed in maintaining their point, it would amount to nothing, unless they further showed that the act of recording a deed was either a payment, pledge, assignment, transfer, or conveyance. But it is not true that the act of recording a deed by a creditor is the act of the debtor. The theory of the power of attorney is altogether fanciful. We might with just as much reason and propriety hold that a customer who pays to a merchant ten dollars for a barrel of flour, gives him an irrevocable power of attorney to buy a coat with the money, and that the investment of such sum in that way by the merchant to cover his own back, was the act of the customer. If the gravity of the case will allow the expression, we say that the position is ridiculous. The creditor in such a case is not the agent or attorney of the debtor. The interests of the two parties are adverse, which can never be the case in an agency or attorneyship. If a creditor has not the right to record a deed for his benefit, it is because he has contracted not to do so, and not because he has no such power as the agent or attorney of the grantor. In the present case, the evidence is plenary that the deed of trust creditors had the right to record the deed at any time, and that when they did record it, it was done as their act and not as that of Wynne. In the discussion of this matter we have assumed, for the sake of the argument, that the recordation was after the bankrupt act went into operation. But is such the fact? It is in evidence that the deed was recorded about four o'clock on the afternoon of March 2, 1867. The congressional term expired by limitation of law at high noon on Monday, March 4, 1867. The 3rd was Sunday, dies non. It is well known that under such a state of facts, the president attends the night session of Saturday for the purpose of approving the laws then enacted. We understand that the bankrupt act of 1867, after having been made the subject of conference, passed late on Saturday, and was approved many hours after the time of the recording of Wynne's deed. Nay, it is well known that all laws approved by the president bear date one day before they are announced as approved to the house in which they originated, except in the special case to which we have referred, when the president attends the night session of congress. It is the well-known practice of the presidents to examine ordinary legislation of congress on the night of the day on which the bills are delivered to him, and if they meet his approval to endorse that approval on them, as of the date of that day. They are then regularly on the following day reported to congress, but bear date the preceding day. Probably not one act in a thousand has beeen endorsed with an approval before four o'clock in the afternoon of the day on which it appears to have been approved. In the light of these facts, we call your honor's attention to In re Richardson [Case No. 11,777]. Mr. Justice Story there held that the time of the day at which an act was approved might be inquired into, and if the fact appeared that a transaction took place before that hour, though on the same day, it was not affected by the act. He further held that if the matter was in doubt, and if it did not affirmatively appear whether the act was approved before the transaction occurred, the actors in the transaction should have the benefit of the doubt.

We now propose to examine this case in the worst possible light for the deed of trust creditors, and will take it as an admission, for the sake of the argument (although the proofs show otherwise), that Wynne was in failing or insolvent circumstances in August and December, 1866—that he knew that fact—that the deed of trust creditors knew that fact, that Wynne was insolvent when the deed of trust was recorded, that the deed of trust creditors knew that fact also as well as Wynne, and that the date of the record of the deed of trust was subsequent to the approval of the bankrupt

act. We propose to show by the clearest and most abundant authority that even under such a state of facts, the deed of trust creditors are entitled to have the lien of their deed enforced.

Nothing is more ·clearly· settled as law in all the states,· than that an unrecorded conveyance or assignment is good as between the parties to the instrument and their representatives. It is so by virtue of the contract between the parties. To use the language of the books, "it results from contract." This is a fundamental principle of the law, growing out of the expressed written stipulations of the parties, and upon which the very statutes which provided otherwise as to creditors and purchasers without notice, are based. Hence, the statute of Virginia recognizes this doctrine in providing for the protection of creditors and purchasers. "Every deed of trust, conveying real estate or goods and chattels, shall be void, as to creditors and subsequent purchasers for a valuable consideration without notice, until and except from the time that it is duly admitted to record." Without such a provision in the law, by virtue of the contract between the parties to the deed, the conveyance would be good as against creditors and purchasers, even before or without being recorded. If there was any doubt about this elsewhere, it is well settled in Virginia, by repeated decisions and by the concessions in reported cases, that as between the parties to a conveyance and their representatives, it is perfectly valid and effectual. Glazebrook's Adm'rs v. Ragland's Adm'rs, 8 Grat. 332; McClure v. Thistle's Ex'rs, 2 Grat. 182. Even the recitals in an unrecorded deed are evidence against the grantor and all claiming under him. Wiley v. Givens, 6 Grat. 277. In Johnston v. Slater, 11 Grat. 321, the court of appeals says: "Registration is not necessary between the parties to a deed; that it is not necessary as against volunteers or purchasers with notice."

If the doctrine of the opposite side be true, we are thrown into singular absurdities. On their theory, if Wynne had made a conveyance between December 8 and March 2 to another party having notice of the deed of December 8, and before March 2 had recorded it, such conveyance would have been valid against the assignee. But yet such conveyance would not be valid against the grantees in the deed of December, because of the notice. On the theory of the opposite side, we would then have this absurd state of affairs—to wit, Enders & Co. would have a valid deed as against the subsequent purchaser with notice, but not valid as against the assignee; while on the other hand the deed to the subsequent purchaser with notice would be valid against the assignee. When a doctrine leads to such absurd conclusions as these, we may rest very sure that the reasoning upon which it

is based is vicious. ˙ We therefore take it as a matter beyond respectable controversy, that the beneficiaries of an unrecorded deed have a lien as against the grantor and his representatives, which will be enforced in any court of equity.

We now proceed to discuss the character and quality of the estate which vests in the assignee by virtue of the bankrupt law, and especially to consider what are his rights, where a deed of trust was made before the passage of the bankrupt act, but not recorded until after such passage. The fourteenth section of the bankrupt act defines the rights of the assignee. He has "all rights in equity, choses in action, and all the bankrupt's rights of action for property or estate, real or personal, and for any cause of action which the bankrupt had against any person, arising from contract, and all his rights of redeeming such property or estate, with the like right, title, power, and authority to sell, manage, dispose of, sue for, and recover or defend the same, as the bankrupt might or could have had, if no assignment had been made." The rights of the assignee, and the quantum of his interest in the estate of the bankrupt are learnedly discussed in the leading case of Winsor v. McLellan [Case No. 17,887]. That was the case of an unrecorded mortgage of a vessel. The vessel was sold by the assignees, and the question was, whether the funds should be paid to the general creditors or to the mortgagees. Judge Story, in his opinion, uses the following language: "Now the principle has been long established, that the assignee in bankruptcy does not stand in the position of a purchaser, nor even in so favorable a position as an individual creditor may stand. The assignee in bankruptcy takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it,. and subject to all the equities which exist against the same in the hands of the bankrupt." In the same case, he says, when referring to the legal effect of the unrecorded mortgage: "In the view which I take of the matter, the bill of sale took effect as a mortgage, at the time of the execution and delivery thereof to the trustees on December 9, 1841." In Parker v. Muggridge [Id. 10,743] Judge Story uses the following strong language in reference to mere equitable liens, arising from contract, to wit: "The plaintiffs have an equitable lien and a superior title to the property over the assignee and the general creditors: and the assignee must take the property of the bankrupts for the general creditors, subject to this lien and superior title. The case of Dale v. Smithwick, 2 Vern. 151. is strongly in point, as to the nature and obligation of a contract of this sort to create an equitable lien or trust in property. In Legard v. Hodges. 1 Ves. Jr. 477, Lord Thurlow said, that it was an universal maxim, that wherever persons agree concerning a particular

subject, in a court of equity, as against the party himself, and any claiming under him, voluntarily, or with notice, it raises a trust. The cases of Ex parte Copeland, 3 Deac. & C. 199, Ex parte Prescott, 1 Mont. & A. 316, and Ex parte Flower, 2 Mont. & A. 224, established that the same rule prevails in bankruptcy; and that the property will be followed and affected with the trust in the hands of the assignees, in the same manner and to the same extent, as it would be in the hands of the bankrupt. We all know that in bankruptcy, the assignee takes only such rights as the bankrupt himself had, and is subject to the like equities."

In Fletcher v. Morey [Case No. 4,864], which was the case of an equitable lien against certain shipments, Judge Story says: "Now, before proceeding to the points more directly in judgment, it is proper to remark, that it is a perfectly well settled principle in equity, that the assignee in bankruptcy takes the property and rights of the bankrupt in the same plight and condition, and with all the equities attached thereto, in the same manner as the bankrupt himself held them. I recollect at present but one exception to the doctrine, and that is in the case of fraud. The general rule was laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, and it has constantly been adhered to ever since. I need not cite the authorities at large. Many of them will be found referred to in a recent opinion, which I had occasion to deliver in the case of Mitchell v. Winslow [Case No. 9,673], at the last October term of the circuit court at Portland."

This, then, being the established principle, the first question which arises in the case is, whether there is any equitable lien, or right, or claim, under the agreement, which ought to be enforced specifically in equity against the shipments made to and for Messrs. Read & Co., or the proceeds thereof, so far as they can be distinctly traced in the hands of the assignee; and upon this point I entertain no doubt whatever. In equity, there is no difficulty in enforcing a lien or any other equitable claim, constituting a charge in rem, not only upon real estate, but also upon personal estate, or upon money in the hands of a third person, whenever the lien or other claim is a matter of agreement, against the party himself, and his personal representatives, and against any persons claiming under him voluntarily, or with notice, and against assignees in bankruptcy, who are treated as volunteers; for every such agreement for a lien or charge in rem, constitutes a trust, and is accordingly governed by the general doctrine applicable to trusts.

After enforcing this view by a citation of authorities, Judge Story proceeds: "Assuming that the state courts have no power to enforce the lien or equitable claim or charge, arising under the present agreement, it is still capable of being specifically enforced in this court under its general equity jurisdiction, as well as under its particular jurisdiction conferred by the bankrupt acts. It is a valid agreement between the parties, and not prohibited by the laws of Massachusetts." Further in the same case, he says: "But I take it to be clear, that not only liens, but mortgages of personal property are perfectly good and supportable between the parties, and against creditors, where there is no fraudulent intent, and the possession remains in the owner or mortgagor of the property, and is consistent with the deed and the arrangements made between parties. There is a strong line of authorities, that in cases of sales of personal property, conditional or absolute, the transfer or conveyance is not void, even though the possession remains with the vendor, if that possession is consistent with, and a part of the arrangement intended by the parties in the transfer or conveyance. So that the possession of the property by Messrs. Read & Co., in the present case, is not, in my judgment, a badge of fraud, or against the policy of the law, or in any manner to be deemed inconsistent with the just rights of their creditors; and therefore the agreement is binding and valid to give a lien or equitable charge upon the property in the hands of the assignee, fit to be enforced in the present suit."

In Mitchell v. Winslow [supra] Judge Story says as follows: "The present is a question between the assignee of a bankrupt, acting for the benefit of all the creditors, and the mortgagee, claiming title under his mortgage; and it arises upon a petition, partaking of the character of a summary proceeding in equity, and not in a suit at the common law, or governed by its principles. Now, it is most material to bear in mind, under this aspect of the case, that is a well-established doctrine, that (except in cases of fraud) assignees in bankruptcy take only such rights and interests as the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy; and consequently, they are affected with all the equities which would affect the bankrupt himself, if he were asserting those rights and interests." This was expressly laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, where he said: "The ground that the court goes upon is this, that assignees of bankrupts, though they are trustees for the creditors, yet stand in the place of the bankrupt, and they can take in no better manner than he could. Therefore, assignments of choses in action for a valuable consideration, have been held good against such assignees." The same doctrine was recognized by his lordship in Jewson v. Moulson, 2 Atk. 417. Sir William Grant, in Mitford v. Mitford, 9 Ves. 87, said: "I have always understood assignments from the commissioners, like any other assignment by operation of law, passed his (the bankrupt's) rights, precisely in the same

plight and condition as he possessed them. Even where a complete title vests in them, and there is no notice of any equity affecting it, they take subject to whatever equity the bankrupt was liable to. This shows they are not considered purchasers for a valuable consideration, in the proper sense of the words. Indeed a distinction has been constantly taken between them and a particular assignee for a valuable consideration; and the former are placed in the same class, as voluntary assignees and personal representatives." The same doctrine was held by Lord Thurlow in Worrall v. Marlar, reported in Mr. Cox's note to 1 P. Wms. 459. It has ever since been firmly adhered to, and has been fully recognized at law, in cases of bankruptcy.

We might multiply authorities upon this point indefinitely. We, however, do not deem it necessary, after so distinguished an authority as Judge Story has pronounced the doctrine to be "well established." Now, if the assignee "can take only such rights and interests as the bankrupt himself had," and which the bankrupt "himself could claim and assert at the time of his bankruptcy," it becomes material specially to inquire what rights and interests Wynne himself could have claimed against the deed of trust creditors, at the time he was declared a bankrupt. We have already shown by the highest authority in the state, that the deed even when unrecorded was valid and effectual as between the parties, and that Wynne could assert nothing against the legal effect of its provisions. Judge Story holds that even the equitable liens of third parties will be enforced by a bankrupt court under its equity powers, against an assignee. Surely, if this is so, a regular and formal assignment, recognized by the statute law; will be respected and enforced. The same eminent jurist, in one of the cases to which we have referred, declares that a bankrupt court would enforce liens, even if there was no specific provision in the act requiring it. Be that as it may, it is very certain that it is the well-established practice of the bankrupt courts to enforce all liens that exist by virtue of state laws. The bankrupt act adopts the liens that are known to the laws of the states respectively. If a lien is known to the law of Virginia, which is not recognized in New York, your honor will enforce it. For that reason we have specially referred to the decisions of the court of appeals, to sustain the position that an unrecorded deed does establish a lien as between the parties to the instrument. If the deed of trust had never been recorded, it would be a lien as against the grantor and those claiming under him. Nay, more, it would be good as against the whole world, excepting creditors who had themselves acquired a lien, or purchasers without notice. No creditor either before or since the date of the recordation has acquired an adverse lien, nor has there been any purchase with or without notice. We submit, therefore, in every aspect of the case, that Enders, Paine & Williams can rightly claim their lien, and that the assignee should be instructed to pay first out of the proceeds of sale now in his hands, the claims secured by the deed of trust.

We have not deemed it necessary to refer to the thirty-ninth section of the bankrupt act, as it relates to acts of bankruptcy, and only touches incidentally the matter of assignments and conveyances. Moreover in that portion which refers to conveyances and assignments, the provisions are identical with those of the thirty-fifth section and what we have said in relation to the latter, will apply with equal force to the former. Nor have we discussed whether Wynne was insolvent or contemplated bankruptcy, or whether the creditors knew that he was insolvent. We have thought that our case was sufficiently strong in its legal bearings for us to admit, for the sake of argument, anything that might be claimed in those respects by our adversaries.

Since the foregoing was written, we have been informed that your honor has already decided that a vendor's lien will be respected and enforced in your court. We do not know the name of the case, but a brief mention of the facts will doubtless bring it to your honor's recollection. In May, 1867, A sold land to B and executed a conveyance to him. B executed his promissory notes for the unpaid purchase money, and stipulated that he would secure them by a deed of trust. He, however, neglected or refused to do so, and in February, 1868, went into bankruptcy. Your honor held in that case that the vendor had a lien for the unpaid purchase money, which you would respect and enforce. Judge Story held to the same doctrine in Fletcher v. Morey [Case No. 4,864]. Such a case is surely not as strong as the present one in favor of the creditors. In that there was no deed at all, and of course no record.

We also call your honor's attention to the well-considered opinion of Chief Justice Ames of Rhode Island, in the recent case of Stone v. King, 7 R. I. 358, in which he held that a trust deed, which was given without consideration even, and which the grantor delivered to the trustee, who at the grantor's request communicated the fact of that delivery to the cestui que trust, and promised him to record it, could be enforced against the grantor, although the trustee afterwards refused to accept the trust, and returned the deed to the grantor, to be cancelled, and although the deed itself was destroyed by the grantor. The court in its opinion said: "The party who makes a voluntary deed, whether of real or personal estate, without reserving a power to alter or revoke it, has no right to disturb it; and as against himself, it is valid and binding, both in law and equity." If this is so as to voluntary conveyances, how much more is it so, in regard to conveyances

for a valuable consideration, as in the present case? And how does the fanciful theory of a power of attorney, raised by the opposite side, comport with such principles as these? As to the doctrine that a voluntary settlement even, can not be revoked, without an express power of revocation reserved, see Villers v. Beaumont, 1 Vern. 100, and Bale v. Newton, Id. 464. Hare & Wallace, in their notes to the case of Ellison v. Ellison, 1 White & T. Lead. Cas. Eq. marg. p. 192, say: "When once an instrument creating a valid and complete trust is duly sealed and delivered, the obligation is complete; the detention of the instrument by the grantor does not render it inoperative." These annotators refer to many cases, where the deed was not only never recorded, but where the grantor kept possession of the instrument; yet as against the grantor and all parties claiming under him, the deeds were enforced. In the present case, the deed was actually delivered to the creditors. Of course it will be borne in mind that the deed was executed prior to the passage of the bankrupt law, and that under the law as it then existed, would have been enforced by the law of Virginia. All, such instruments have been since declared (if made after the passage of the bankrupt act by an insolvent) to be in fraud of the bankrupt law. It would be more proper phraseology to say "in violation" of the bankrupt law, because the act expressly makes such a preference by an insolvent, an act of bankruptcy. If not made by an insolvent, such preferences still hold. Even if made by an insolvent, they are not avoided unless the grantee or beneficiary had reason to believe the grantor insolvent. The true conclusion from all this is, that only conveyances made since the passage of the bankrupt act by an insolvent are in fraud or in violation of such act, and are not then avoided, unless the beneficiary has reason to know the insolvent condition of the grantor. A preference made since the passage of the act, may be an act of bankruptcy, without at the same time being void. We only mean to insist that when the judges in interpreting the bankrupt law, speak of conveyances or preferences in fraud of the law, they mean only to apply such phraseology to conveyances made since the bankrupt act was adopted. They never have meant to say that a conveyance or preference made before the act, even by an insolvent, was either fraud in fact, or fraud in law. So far from any actual or constructive fraud attaching to such preferences, they were, we believe, in every state in the Union, certainly in Virginia, enforced not only against the grantor and those claiming under him, whether the preferences were recorded or not, but even against creditors and purchasers without notice, unless they acquired a lien or possession before record. See 13 Grat. 615, that an unrecorded deed will prevail against general creditors, even after the death of the grantor.

CHASE, Circuit Justice. The question in this case arises upon a petition of John Johns, Jr., assignee of Charles H. Wynne, an involuntary bankrupt, who asks for instructions as to the order of payment of claims against the bankrupt estate. Wynne was adjudicated a bankrupt on the petition of Wheelwright, Mudge & Co., filed in the district court of the United States for the district of Virginia on June 8, 1867. Enders, Paine & Williams claimed to be preferred in payment under a deed of trust dated August, 1866, which was never recorded; or if that claim be disallowed, then under a deed of trust dated December 8, 1866, recorded March 2, 1867.

Haxall & Co. also insist on preference upon the ground that Wynne was tenant under them of the warehouse which he occupied, and that under the law of Virginia, they as landlords had a lien for the rent due at the date of the petition; to enforce which on June 10, 1867, they sued out a distress warrant for two thousand one hundred and twenty dollars, the amount of rent then due, and caused the same to be levied on the goods then on the premises, and subsequently, on July 18, 1867, sued out an attachment, which was levied the same day upon the same goods, for one thousand five hundred dollars, the amount of rent to become due on December 1, 1867. We will consider the claim to preference on payment advanced on behalf of Enders, Paine & Williams, and we must say at once that so far as this claim is founded on the deed of August, 1866, it can not be admitted. It is doubtless true that a mortgage or other conveyance made as security for a debt evinced by a note or bond will operate as security for the same continuing debt, though the evidence of it be changed by renewal or otherwise. [Farmers' Bank v. Mutual Ins. Soc., 4 Leigh, 69.] Winsor v. McLellan [Case No. 17,887].[2] But in this case it is the security itself which has been changed, and not the evidence of the debt. The deed of December 8, 1866, was executed, as it seems, in substitution for that of August, which thereupon ceased to have any validity or effect.

The only question now to be determined is, therefore, whether or not the deed of December created a lien upon the property described in it, which the assignee of the bankrupt must satisfy before applying any of its proceeds to the claims of the general creditors. And it is to be observed that the deed is not condemned by the thirty-fifth section of the bankrupt act, which avoids all assignments and other modes of preference made or attempted by insolvents, or persons in contemplation of insolvency,

---

[2] [From 9 Am. Law Reg. (N. S.) 627.]

within four months before the filing of the petition in bankruptcy, or in case the person to be benefited has notice of the intent within six months before such filing. The deed in question was not made within either limit of time. It need not, therefore, be here considered whether either period could begin to run till after the passage of the act. If the deed is to be treated as void or inoperative as against the assignee by operation of the act, it must be because of effect of that clause of the fourteenth section, which provides that "all the property conveyed by the bankrupt in fraud of his creditors," "shall in virtue of the adjudication of bankruptcy and the appointment of the assignee be at once vested in such assignee." We do not doubt that the assignee takes the property in the same plight in which it was held by the bankrupt when his petition was filed ([Winsor v. McLellan, supra]; [2] Bradshaw v. Klein [Case No. 1,790]), subject to such liens or incumbrances as would affect it if no adjudication in bankruptcy had taken place; but it is to be remembered that the assignee represents the rights of creditors as well as the right of the bankrupt, and that any lien or incumbrance which would be void for fraud as against creditors, if no petition had been filed or assignee appointed, will be equally void as against the general creditors represented by the assignee. In re Richardson [Id. 11,777]; Carr v. Hilton, 1 Curt. 230 [Case No. 2,436].

This is what the act means when it vests in the assignee, "all property conveyed in fraud of creditors." It does not make any conveyance or incumbrance fraudulent. It simply clothes the assignee with the entire title, notwithstanding such conveyance or incumbrance, and makes it his duty to invoke the proper jurisdiction to annul the fraudulent proceedings. And it may be remarked further that, except to this extent, the bankrupt act has no influence upon this case, so far as the deed of trust is concerned.

Much was said in argument concerning the effect of the record of this deed upon March 2. 1867; and it was strenuously urged that the deed was avoided by the effect of the act which purports to have been approved on that day. But we entirely concur with Mr. Justice Story, in thinking that where the question is as to effect of a proceeding instituted on the same day on which an act affecting the validity of such proceeding was passed, the precise time at which the act became a law may be properly inquired into. See Winsor v. Kendall [Case No. 17,886]. And in this we think ourselves warranted also by the reasoning of the supreme court. Gardner v. Collector, 6 Wall. [73 U. S.] 511.

Now, it is in proof that the deed of trust was recorded about 4 p. m. March 2, 1867; and it appears from the senate journal of the session during which the act was passed

[2] [From 9 Am. Law Reg. (N. S.) 627.]

that the day denominated March 2, in the journal, and in the approval of the statute by the president, consisted in fact of Saturday, March 2, of Sunday the third, and of Monday the fourth, until noon; and it appears further that the bill which afterwards became the bankrupt law was not enrolled and delivered to the proper committee, to be presented to the president for his signature, until after the recess, which ended at 7.30, p. m. on Sunday, and was not reported to the senate as actually signed by the president until after 9.40, a. m. on Monday. Senate Journal, 2d Sess. 39 Cong. 1866–67, pp. 432, 458; Rev. Code, 1860, p. 566, § 5. It can not be doubted, then, that the deed of trust was in fact recorded nearly two days before the bankrupt bill became a law; and we think ourselves not only warranted, on general principles, but bound by the constitution, to notice the fact thus appearing upon the public records. It may well be questioned, indeed, whether, if the act had been approved before the recording of the deed, the effect of the latter would have been altered. Nothing in the thirty-fifth section touches the deed; and nothing in any other except the fourteenth. It may be, and we think it is, true that if the deed had remained unrecorded when the petition in bankruptcy was filed the title of the assignee would have prevailed against any claim under the deed, for the assignee represents the creditors, and the statute of Virginia expressly declares "any deed of trust void as to creditors," until and except from the time it is duly admitted to record. It is not an unreasonable construction of the bankrupt act, as we think, which regards it as vesting in the assignee, for the benefit of creditors in general, the estate of the bankrupt, discharged of liens or trusts which at the time of the petition are valid inter partes under the statute of the state in which they are claimed to exist. But we do not see how the mere enactment of the law could affect a deed previously executed.

It is not, however, necessary to consider these points here. The important question in the case is whether under the fourteenth section of the bankrupt act this deed must be regarded as inoperative against the assignee. The counsel for the assignee has argued with much earnestness that the deed can not be sustained without disregarding the implied effect of the first clause of the second general proviso of that section: "That no mortgage of any vessel or of any other goods and chattels made as security for any debt or debts in good faith and for consideration, and otherwise valid and duly recorded pursuant to any statute of the United States, or of any state, shall be invalidated or affected hereby."

The argument is that all mortgages not expressly saved from the operation of the act by this clause must be held invalid; and, therefore, that all deeds of trust and other conveyances intended as security for debts,

and not within the description of the mortgages expressly saved, must also be invalid.

But we can not adopt this reasoning. It would be going too far, we think, to hold all mortgages not included by the terms of the description to be invalidated by the act. The clause expressly saves certain mortgages, but it says nothing as to the others. Much less does it say anything as to deeds of trust or conveyances of analogous character. It leaves all deeds and instruments of writing not expressly saved to the general principles of jurisprudence. To hold otherwise would, we think, be to give to the act an ex post facto operation contrary the intent of congress. And it would be quite gratuitous so to hold; for the rights of creditors as against all instruments not described in this clause are fully protected by that which stands next in the section and vests in the assignee, for their benefit, all the property conveyed by the bankrupt in fraud of his creditors.

The next question in this case, therefore, is whether the deed of trust by which the several liabilities of Enders, Paine & Williams, for Wynne, were secured, was made in fraud of the creditors of Wynne. It has been argued that the deed of trust took effect as against creditors only on March 2, 1867, and that the recording of the deed on that day was itself an act of bankruptcy. To maintain this proposition it is necessary to show that the recording of the deed was the act of Wynne. But clearly it was no act of his. The deed as against him was operative from its date. It was then that all his interest in the property described in it became vested by way of security in the trustee. It was then that he delivered the deed and parted with all control of it. If the beneficiaries were satisfied with the security afforded by the deed unrecorded, there was neither necessity nor obligation to record it. To record it was only necessary to make it a valid security against other creditors; and it was not for Wynne, but for the creditors secured by the deed, to determine whether it should be recorded or not. The delivery of it for record was in no sense his act, but theirs. In no sense, therefore, can it be regarded as an act of bankruptcy. But it has been argued that as against creditors, it must be regarded as a deed executed at the date of the record, and, therefore, as a deed creating a preference on that day, which was within four months of the filing of the petition. There is ingenuity and apparent force in this argument. But we think there are decisive answers to it. In the first place, the preference which the law condemns is a preference made within the limited time by the bankrupt, not a priority lawfully gained by creditors; and we have just shown that the preference gained by the record was not a preference made by the bankrupt. And, in the second place, the law which makes deeds of trusts void "until and except from" the time of record, clearly makes them valid at and

from that time. And it is as much the policy of the bankrupt act to uphold liens and trusts when valid, as it is to set them aside when invalid.

It is hardly necessary to add that this must be especially true of a trust deed created and recorded before the approval of the bankrupt act. Was there any actual fraud in giving or taking the security created by the deed of trust? There has been no attempt to maintain this.

It has been said that Enders, Paine & Williams, on December 8, 1866, knew that Wynne was insolvent, but it is not denied that they had a right to obtain if they could preference in payment under the laws of Virginia. They could obtain it by direct transfer of property by deed of trust, by judgment and execution. Until after the passage of the bankrupt act, nothing but fraud in obtaining the preference could invalidate it in whatever mode obtained. It is not necessary to insist on this in the case before us, for we do not think that the evidence establishes as matter of fact that at the date of the deed, or at the date of the record, Enders, Paine & Williams were aware of the actual insolvency of Wynne. They knew, indeed, that he was embarrassed in carrying on his printing and publishing business, but they seem to have fully believed that his property was more than sufficient to pay all his debts.

On the whole, we are of the opinion that the deed of trust must be supported as a valid deed, and that the creditors named in it are entitled to be paid out of the proceeds of the property embraced in it.

The remaining question to be considered is, whether at the time of the filing of the petition in bankruptcy Haxall & Co. had any lien for rent upon the property of the bankrupt. This is the same property which was conveyed by the deed of trust, and the solution of the question just stated may be affected in some measure by the conclusion to which we have come in respect to the validity of lien created by that deed. And in considering the question now to be disposed of, we lay out of view the proceeding by distress warrant and also the proceeding by attachment. As we understand the bankrupt act, all the rights and all the duties of the bankrupt in respect to whatever property, not expressly excluded from the operation of the act, he may hold under whatever title, whether legal or equitable, and however incumbered, pass to and devolve upon the assignee at the date of filing of the petition in bankruptcy. And all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed, though in cases where jurisdiction has been previously acquired by state courts of a suit brought in good faith to enforce a valid lien upon

property, such jurisdiction will not be divested. Peck v. Tennessee, 7 How. [48 U. S.] 612. Whether, therefore, the distress warrant or the attachment be regarded as a proceeding for obtaining or enforcing a lien, each was equally unwarranted. Buckey v. Snouffer, 10 Md. 149. If a lien for rent existed, it was a lien to be discharged by the assignee, and enforced in the United States court of bankruptcy. If it did not exist, it could not be brought into existence by any proceeding whatever.

The real question is, Were the goods on the premises demised to the bankrupt subject to a lien for rent under the state law when the petition was filed, independently of any proceeding by distress or attachment? Liens are various descriptions, and may be enforced in different ways; but we think it sufficient to say here, what seems to us well warranted in principle and authority, that whenever the law gives the creditor a right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of this debt. And we think that a lien of this sort is given by the 12th section of title 41, chapter 128, of the Revised Code of Virginia, adopted in 1860. It expressly prohibits any person having, by deed of trust, mortgage, or otherwise, a lien upon goods of a tenant on demised premises from removing such goods without paying to the landlord the rent due, and securing the rent becoming due, not exceeding one year's rent, and it further requires any officer who may take such goods under legal process to pay out of the process the rent in arrear, and deliver to the landlord sufficient purchasers' bonds for the payment of that becoming due.

We can not doubt that this statute creates a lien in favor of the landlord, and a lien of a high and peculiar character. We have no concern with the policy of this legislation; it is upon the statute book, and the lien it creates must be respected and enforced.

The validity of the deed of trust in this case seems to us clear, and is not doubted by anyone that in the absence of the special circumstances supposed to affect it with invalidity, the lien of the creditors secured by it would be perfect. But these creditors, by no process whatever, could appropriate these goods to the satisfaction of their debts without paying or securing the year's rent; and so of process under execution. The officer of the law, at his peril, must pay the rent out of the proceeds. Would it not be trifling with the plain sense of words to say that there is a lien under the trust deed and a lien under the execution, but the claim which by law is made superior to either as a charge upon the goods is no lien?

We hold in this case that the creditors in the trust have a lien. How can we hold that the landlord, whose claim under the law is superior to theirs, has no lien? It seems to us, therefore, that Haxall & Co. had a valid lien for the arrears of rent due and for so much rent to become due under the lease as will make the whole amount secured equal to a year's rent. And we think that this lien is given by the statute independently of proceedings by distress warrant or attachment, which we regard as remedies superseded by the effect and operation of the bankrupt act [Burket v. Bonde, 3 Dana, 209; Henchett v. Kimpson, 2 Wils. 140]; In re Pulver [Case No. 11,466].[2]

In this case we do not pass upon the claims of Haxall & Co. upon the assignee for rent beyond the year during which the lien for the rent is given. We are inclined to think that he was entitled to the occupancy during the unexpired term; and that for the rent becoming due during that period Haxall & Co. would be entitled to prove their claim against the bankrupts as general creditors.

The decree of the district court will be reversed, and a decree entered in conformity with the principles of this opinion.