## PROVIDENCE COUNTY.

JOHN E. GOLDSWORTHY, Assignee, *vs.* THE ROGER WILLIAMS NATIONAL BANK.

Unless a creditor knows facts which sustain a reasonable belief that his debtor is insolvent, securities given by the debtor to the creditor cannot be invalidated in the creditor's hands as fraudulent preferences. It is not enough that the creditor has cause to suspect that his debtor is insolvent.

Under Pub. Stat. R. I. cap. 237, § 15, amended Pub. Laws R. I. cap. 274, of March 22, 1882, knowledge of insolvency which avoids a preference is knowledge which the creditor has when he receives the preference from his debtor, not knowledge subsequently acquired.

Hence, when a creditor received a mortgage December 4, which he recorded December 15, —
*Held,* that the creditor's knowledge was to be judged as of December 4, not as of the date of record.

Pub. Stat. R. I. cap. 237, § 21, merely gives creditors reasonable time in which to begin proceedings to test preferences given by a debtor.

TROVER AND CONVERSION. Heard by the court, jury trial being waived.

*July* 23, 1887. MATTESON, J. This is an action of trover for the conversion of a stock of musical instruments and other goods and chattels. The plea was the general issue, with an agreement that any matter in defence might be proved which could be introduced under any special plea in bar. The case was heard by the court, jury trial having been waived.

The plaintiff claimed title to the property under an assignment to him for the benefit of creditors, dated December 17, 1886, made by Christian C. Heintzeman and Alfred E. Tenney, under Pub. Stat. R. I. cap. 237, § 12, for the purpose of dissolving attachments by creditors. The defendant claims title to the property under a mortgage to it given by Heintzeman and Tenney, copartners as C. C. Heintzeman & Co., dated December 4, 1886, and recorded December 15, 1886. The plaintiff contended that the mortgage was made by the mortgagors when insolvent, or in contemplation of insolvency, with the intent to give a preference to the bank, and that the latter had reasonable cause to believe that they were insolvent at the time of such preference, and hence that the mortgage was void under Pub. Stat. R. I. cap. 237, § 15, which provides that " conveyances and payments made and securities given by an insolvent debtor, or by a debtor in contemplation of insolvency, within sixty days of the commencement of proceedings against such debtor, under the provisions of sections twelve and thirteen of this chapter, shall be void as to all creditors receiving the same who shall have reasonable cause to believe that such debtor was insolvent at the time of such preference." . . . The bank did not deny that Heintzeman & Co. were in fact insolvent when the mortgage was given, but did deny that it had reasonable cause to believe them insolvent.

The circumstances which led to the giving of the mortgage, as they appeared in testimony, were as follows: Heintzeman & Co. were dealers in musical instruments   In the course of their business they sold pianos and organs under contracts which purported to be leases of the instruments at a specified rent, and which provided that, when an amount had been paid equivalent to the price and interest, the lessors should execute and deliver to the lessee a bill of sale of the instrument, but that until such payments the instruments should remain the property of the lessors; and that, in case of default in payment according to the terms of the contract, the lessors might retake the instrument. They took from the purchasers' notes for the price, usually upon four months' time, but which were renewed from time to time as they fell due, the renewal notes being generally from ten to fifteen dollars smaller in amount, being reduced by payments of instalments of the price or rent. In

some instances the loans extended over a period of two years before they were fully paid. Some time in 1883, Heintzeman & Co., having previously opened an account and begun to deposit moneys with the defendant, applied to it to discount for them such notes as they might take from their customers for musical instruments sold under the contracts above described. The bank consented, and thenceforward, from time to time down to the making of the assignment, discounted such notes upon the indorsements of the firm and of Tenney individually, and with the understanding that all such notes were secured by contracts of the character above described, and that such contracts were held by the firm for its, the defendant's, benefit. In the fall of 1885 the aggregate amount of such notes outstanding, which had been so discounted, was fifteen thousand dollars. The bank then called upon Heintzeman & Co. to reduce the amount by the payment of one hundred dollars a week. Under this requirement Heintzeman & Co. continued to pay to the bank one hundred dollars a week until December, 1886, when the amount of such outstanding discounts had been reduced to between ten and eleven thousand dollars. They then asked to be relieved for a time from this weekly payment. They represented to the bank that they had a large stock of goods on hand, on which they owed but comparatively little, but that, by reason of having sold their goods in the manner stated, on long credits, and their inability to collect payment therefor except in small instalments, they needed more money. They also represented it as annoying and inconvenient to them to be obliged to attend to the renewal, from week to week, of so many small notes, and they therefore asked to be permitted to substitute their own note or notes, indorsed by Tenney individually, on four months' time, in place of the small trade notes outstanding. To this the bank demurred, being unwilling to surrender the small notes, which it deemed secured as above described, and to take in place thereof simply the note or notes proposed, the liability of the makers and indorser of which it already had on the small notes. As the bank would not consent to this proposition, Heintzeman & Co. finally offered to give the bank their note, on four months' time, for six thousand dollars, indorsed by Tenney individually, and secured by the mortgage in question, on condition that they should be re-

lieved from the weekly payment of one hundred dollars, and should have surrendered to them an equal amount of the small trade notes. The bank assented to this proposal, and accordingly the note and mortgage in question were made and delivered to the bank, and the bank surrendered to the firm small trade notes to the amount of six thousand dollars.

The burden of proving that the bank had reasonable cause to believe that the mortgagors were insolvent when it took the mortgage was upon the plaintiff. "Reasonable cause to believe a trader insolvent," as the phrase is used in bankrupt and insolvent laws, means knowledge of such a state of facts in respect to the affairs and pecuniary condition of the debtor as would lead prudent business men to the conclusion that the debtor cannot meet his obligations as they mature in the ordinary course of business. *Toof* v. *Martin*, 13 Wall. 40 ; *Buchanan* v. *Smith*, 16 Wall. 277 ; *Wager* v. *Hall*, 16 Wall. 584 ; *Burfee* v. *First National Bank of Janesville*, 9 Nat. Bankr. Reg. 314, 317. It is not enough to invalidate, as a fraudulent preference, a security taken for a debt, that the creditor has some cause to suspect the insolvency of the debtor. He must have a knowledge of such facts as to induce a reasonable belief that such is the debtor's condition. *Grant* v. *National Bank*, 97 U. S. 80, 81, affirmed in *Barbour* v. *Priest*, 103 U. S. 293, 297, and reaffirmed in *Stucky* v. *Masonic Savings Bank*, 108 U. S. 74, 75. In view of these principles, we do not think that the evidence is sufficient to sustain the plaintiff's claim that the defendant, when it took the mortgage in question, had reasonable cause to believe the mortgagors to be insolvent. The facts chiefly relied on by the plaintiff were the sales of the notes of the firm by brokers on the street, the exchanging of its checks with other firms, and overdrafts of its bank account. It was not shown, however, that these practices had become habitual with the firm in the conduct of its business, to the knowledge of the officers of the bank. With respect to the first, it was shown that only in a single instance, which occurred six months or more before the giving of the mortgage, the president of the bank had knowledge that a broker had offered a note of the firm for sale upon the street. He testified, and there was no testimony to the contrary: "I only know that on one occasion I heard of one of

their notes being in the hands of a broker, who was offering it upon the street for sale. It surprised me very much, and I told Mr. Heintzeman it ought not to be. I saw Mr. Tenney, and told him of it. He was surprised, and said it should be stopped. I saw Tenney afterwards, and he said it had been stopped." With respect to the exchanging of the checks of the firm with other firms, it was not shown that the officers of the bank had knowledge of more than one such instance, and that also occurred six months or more prior to the giving of the mortgage. With respect to overdrafts of its bank account, the evidence shows that such overdrafts occasionally occurred during the last year of the business of the firm, but in such cases the checks were not paid by the bank, and they were subsequently taken care of by the drawers. It was not shown that the firm had, to the knowledge of the officers of the bank, or in fact, failed to meet any of its obligations at maturity in the ordinary course of business. We think that the most that can be claimed for the evidence is that it was sufficient to charge the bank with knowledge that the firm was embarrassed in carrying on its business by the want of ready money, and that, though this was a circumstance which, standing by itself, might tend to create a suspicion of insolvency, yet it was not sufficient to necessarily induce belief that the firm would not be able to continue its business and to meet its obligations as they matured, when taken in connection with the knowledge which the testimony shows the officers of the bank had, or supposed they had, concerning the assets and liabilities of the firm.

The officers of the bank, cognizant of its transactions with the mortgagors, all testified that they knew of no particular indebtedness of the mortgagors, outside of their indebtedness to them as indorsers of the small trade notes, and that they believed them to be solvent and amply able to pay all they owed. They admitted that they knew that the firm was straitened for ready money by reason of having sold its goods on long credits, and its inability to collect payment for the goods sold, except in small instalments, for the firm had so represented to them as a reason for being relieved from the weekly payment of one hundred dollars ; but coupled with this representation, as they testified, and this is not denied, was the assurance that the firm had assets largely in ex-

cess of its liabilities, and that it only needed a little accommodation to enable it to go along with its business, which assurance was strengthened by the fact that the mortgagors had previously, on two different occasions, the latter within six months prior to the mortgage, submitted to the officers of the bank written statements of their financial condition, showing assets in excess of liabilities to the amount of from twelve to fifteen thousand dollars. Even Heintzeman and Tenney themselves testified that they believed that at the date of the mortgage their assets largely exceeded their liabilities, and the former also testified that his first knowledge to the contrary was the result of the inventory taken by him under the direction of the assignee.

The plaintiff contended that the reasonable cause to believe a debtor insolvent which avoids a conveyance, payment, or security given as a preference, under Pub. Stat. R. I. cap. 237, § 15, quoted above, is the reasonable cause to believe the debtor insolvent which the creditor has at the time when the preference becomes effectual against other creditors of the debtor ; and hence, as the mortgage in the present case was not recorded until December 15, 1886, and therefore did not take effect as against other creditors of the mortgagors until that date, it is void under said section if the bank then had reasonable cause to believe the mortgagors insolvent. We do not assent to this view. The statute makes the reasonable cause for belief in the insolvency of the debtor which avoids a preference, the belief of the creditor *at the time of receiving the preference.* The preference is the act of the debtor. The preference is received by the creditor when the conveyance creating it is made and delivered ; for then it is that the conveyance becomes operative as against the debtor, and he parts with his interest in and control over the property conveyed. The subsequent act of recording the conveyance is the act of the creditor, not of the debtor. We think, therefore, that the reasonable cause to believe the debtor insolvent which avoids the preference is such reasonable cause at the time the conveyance creating it is delivered, and not such reasonable cause when the conveyance is recorded. *In re Wynne*, 4 Nat. Bankr. Reg. 23, 28, 29 ; *Seaver* v. *Spink*, 8 Nat. Bankr. Reg. 218, 219, also in 65 Ill. 441 ; *Folsom* v. *Clemence*, 111 Mass. 273, 275, 277. We think that the

purpose of Pub. Stat. R. I. cap. 237, § 21, which enacts, " That the sixty days mentioned in section fifteen of this chapter, within which mortgages and other conveyances shall be liable to be set aside and be made subject to the provisions of this chapter, shall begin to run from and after the leaving of such mortgage or other conveyance for record at the office of the proper registering officer, provided that such mortgage or conveyance is one required by law to be recorded," is merely to afford creditors a reasonable time within which to institute proceedings to test the validity of a mortgage or other conveyance alleged to be a preference, after such mortgage or conveyance has come to the knowledge of creditors by being left for record.

*Judgment for defendant for costs.*

*Arnold Green*, for plaintiff.
*Simon S. Lapham & John T. Blodgett*, for defendant.

