## Case No. 2,436.

### CARR v. HILTON et al.

[1 Curt. 230.] [1]

Circuit Court, D. Maine. Sept. Term, 1852.

BANKRUPTCY—WHAT ARE ASSETS—LAND FRAUDULENTLY CONVEYED IN TRUST — LIMITATION OF ACTION BY ASSIGNEE — REPEAL OF BANKRUPT ACT—EFFECT.

1. Lands held for a bankrupt, upon a trust which resulted from the payment of the entire consideration by the bankrupt, before the bankrupt act was passed, belong to the assignee.

[Cited in Allen v. Massey, Case No. 231; Kinzie v. Winston, Id. 7,835; Re St. Helen Mill Co., Id. 12,222; Re Werner, Id. 17,-416.]

2. If such trust was created to conceal the property from creditors, this might prevent a court of equity from lending its aid to the bankrupt to enforce the trust, but the assignee may enforce it, for the benefit of creditors.

[Cited in Allen v. Massey, Case No. 231; Crapo v. Kelly, 16 Wall. (83 U. S.) 638; Bailey v. Glover, 21 Wall. (88 U. S.) 348; Glenny v. Langdon, 98 U. S. 28; Tyler v. Angevine, Case No. 14,306; Re Wynne, Id. 18,117.]

3. Lands conveyed to a third person by the bankrupt, without any consideration, upon a secret parol trust in his favor. for the purpose of defrauding creditors, pass to the assignee, although the conveyances were made before the passage of the bankrupt act.

[Cited in Bradshaw v. Klein, Case No. 1,790; Pratt v. Curtis, Id. 11,375; Tiffany v. Boatman's Savings Inst.. 18 Wall. (85 U. S.) 387; Cady v. Whaling, Case No. 2,285; McAlpine v. Hedges, 21 Fed. 690.]

4. Under the eighth section of the bankrupt act [5 Stat. 446] the cause of action in such a case does not accrue, until the fraud is discovered.

[Cited in Martin v. Smith, Case No. 9,164; Baldwin v. Raplee, Id. 801; Re Dole, Id. 3,965. Applied in Mattocks v. Rogers, Case No. 9,300.]

5. The repeal of the bankrupt act does not prevent an assignee from instituting suits to reduce the property of the bankrupt to possession.

[6. Cited in Rison v. Knapp, Case No. 11,-861, to the point that contemplation of bankruptcy means something more than insolvency.]

[Cited in Barker v. Barker, Case No. 986; Nicholas v. Murray, Id. 10,223.]

[In equity. Bill by Joshua Wingate Carr, assignee in bankruptcy of William Smith, against Stephen Hilton et al., to reach certain alleged assets of the bankrupt. The defendant demurs to the bill.]

Mr. Stewart. for demurrer.
Allen & Warren, contra.

CURTIS, Circuit Justice. J. Wingate Carr, as assignee in bankruptcy of William Smith, has filed his bill in equity, stating that Smith was decreed a bankrupt, and the complainant appointed his assignee, in February, 1843; that the amount of debts sworn to by the bankrupt was large, while the assets disclosed by him were not sufficient to pay the charges of the bankruptcy; that at different dates, between the years 1834 and 1840, inclusive, the bankrupt being insolvent, for the purpose of concealing his property from his creditors. made sundry conveyances thereof to the defendant, and facts are stated showing that the defendant must have participated in this fraudulent intent. The bill further states that the bankrupt exchanged some property for a farm in Newport, in the district of Maine, and instead of taking the title to himself, caused the same to be conveyed to the defendant, and his brother since deceased; that the latter has conveyed his title to Henry Warren, Esquire, a counsellor of this court, who is made a party to the bill, and who is ready to perform all such orders and decrees as the court may make in the premises. such being the purpose for which he holds that title; that the title to the said farm was thus vested in the defendant and his brother, to conceal the property from the creditors of the bankrupt, but the bill does not aver that the defendant was a party to this fraud, or had knowledge that the legal title was vested in him. The bill further states that these frauds of the bankrupt were unknown to the complainant until within two years before the filing of the bill, and it details when and how the frauds were discovered by him.

The defendant has demurred to the bill, and has assigned, orally, four causes of demurrer, which must be separately considered. The first is. that these transactions, being all prior to the passage of the bankrupt act, and there being no averment that either of them was in contemplation of bankruptcy, or of the passage of a bankrupt law, no title passed to the assignee, and he cannot sustain this bill. In passing on this objection. it is necessary to distinguish the case of the Newport farm from the other transactions. The legal title to these lands was never in the bankrupt, but the whole consideration having moved from him, a trust resulted to him by operation of law, and he was the equitable owner of the lands, at the date of the decree in bankruptcy. The third section of the act (5 Stat. 442) enacted that all property and rights of property, of every name and nature, and whether real, personal, or mixed, of every bankrupt, except household furniture, &c., not exceeding in value three hundred dollars, shall, by mere

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

operation of the decree, be devested out of the bankrupt, and vested in the assignee. There can be no doubt that the equitable ownership of lands, by reason of a resulting trust, is a right of property, within the meaning of this clause. But it is argued that the section only provides that the assignee shall have the same rights, titles, powers, and authority to sue for the same that the bankrupt had before, or at the time of his being declared a bankrupt; and that the bankrupt himself could not have had the aid of a court of equity, to enforce a trust created for the purpose of defrauding his creditors. Whether a court of equity would permit the trustee to set up the fraud as a bar to a bill by the cestui que trust, it is not necessary in this case to determine. On the authority of Muckleston v. Brown, 6 Ves. 68; Ottley v. Browne, 1 Ball & B. 360; and Chaplin v. Chaplin, 3 P. Wms. 233,—I should hold the affirmative; this, however, would not rest upon any want of title in the bankrupt, but upon a very different ground, which will be presently stated. But there is a very broad distinction between a bill by the bankrupt, the author of the fraud, and one by the assignee, who seeks to recover the property, for the benefit of the very interest sought to be defrauded. The ground for refusing relief to the author of the fraud is a principle of public policy, which forbids the court to be ancillary to a plan for evading the law and depriving creditors of their just and legal rights. But where the assignee sues, the case is reversed: to grant the relief, is to act in accordance with these rights of creditors, and in opposition to the contemplated fraud, while to refuse it would be to aid in its perpetration. Lord Redesdale, in Joy v. Campbell, 1 Sch. & L. 328, held, that legatees and creditors were entitled to relief, and this distinction between the author of the fraud and one claiming through him, had previously been taken by Lord Eldon, in Muckleston v. Brown. See, also, Fairbanks v. Blackington, 9 Pick. 93; Martin v. Root, 17 Mass. 228; Holland v. Cruft, 20 Pick. 321. I am clearly of opinion, therefore, that, as respects these lands in Newport, the assignee may maintain this bill; and as the demurrer is to the whole bill, it follows that so far as respects the objection to the assignee's title, it must be overruled. But as the question concerning his title to the other lands must at some time be determined, and has been fully argued, I think it proper to express my opinion thereon. The argument against the title is, that there are no words in the act sufficient to pass to the assignee, the title to property conveyed by the bankrupt, to defraud his creditors prior to the passage of the bankrupt act. On examining the law, it will be found there are no express words in it passing to the assignee property conveyed by the bankrupt to defraud creditors, at any time, unless made in contemplation of bankruptcy, which is now settled to mean something more than insolvency. Buckingham v. McLean, 13 How. [54 U. S.] 150.

The two great objects of the bankrupt law were, the equal distribution of all the property of the debtor among those justly entitled to it, and the relief of honest debtors, who should conform to its provisions, from the burden of their debts. It is a notorious fact that the pecuniary state of the country at the time, was the great and leading inducement to the passage of the law, and that it was expected and intended to operate, as in fact it did operate, upon a vast number of cases of persons who had previously become insolvent. To hold that no property, fraudulently conveyed by any of these persons, before the date of the law, could be distributed under it, would be so much in conflict with one of its great purposes, that I should come very reluctantly to that conclusion. It does not seem to me necessary to do so. A fraudulent conveyance is no effectual conveyance, as against the interest intended to be defrauded. This interest the assignee represents, so far as respects all creditors who prove their claims. They can have no remedy which will reach property fraudulently conveyed, except through the assignee, because they can sustain no suit against the debtor. Their remedies are absorbed in the great and comprehensive remedy under the commission, by virtue of which the assignee is to collect and distribute among them, the property of their debtor to which they are justly and legally entitled. The case of the assignee is, therefore, that the lands in question are the property of the debtor, and that he prays the aid of this court to remove an apparent cloud upon the title, which, though void, interferes with the discharge of his official duty. In this view, the case is within the express terms of the third section of the act, and it is the view taken in Sands v. Codwise, 4 Johns. 536, especially by Chief Justice Spenser, and Mr. Justice Kent. In my judgment it is a sound view. See, also, Martin v. Root, 17 Mass. 228, and Holland v. Cruft, 20 Pick. 321. But here, also, it is urged, that the subsequent language of this section proves that the words, "all the property and rights of property," &c., were not intended to apply to any property which the bankrupt himself would not have had a title to recover, if he had not been decreed a bankrupt. It is not easily apparent, what was intended by this clause. Its language is, "and the assignee, so appointed, shall be vested with all the rights, titles, powers, and authorities to sell, manage, and dispose of the same, and to sue for and defend the same, as fully, to all intents and purposes, as if the same were vested in, or might be exercised by, such bankrupt, before, or at the time of his bankruptcy, declared as aforesaid." The general idea here conveyed, is, succession to the bankrupt;—though somewhat obscure, this general idea is sufficiently conveyed; but one

difficult inquiry is—succession to the rights belonging to the bankrupt, at what time? The answer of the statute is, "before or at the time of his bankruptcy;" that is, at any time before the instant when the rights and powers of the assignee became vested. I must admit the difficulty of discerning the precise meaning and effect of this clause; but I do not see that it is sufficient to control what, I think, is one of the great objects of the law. If the assignee is vested with the same powers which the bankrupt had before, or at the time of his bankruptcy, he has a right to the interposition of this court, in this case; for there was a time before the bankruptcy, when the title of the bankrupt was perfect. Yet it cannot be supposed that in a clause, the general idea of which is succession, the legislature intended to refer to any and all past rights which had at any time existed. What then is the meaning of the clause, "before, or at the time of his bankruptcy," as descriptive of the period of time to which reference is to be had, in considering what rights and powers this clause confers on the assignee? This is a question of great difficulty, and, in my judgment, the only safe means of solving it are found in the general purpose and object of the law. This general purpose requires that property, which belonged to the bankrupt, at the time of the bankruptcy, should be distributed among his creditors who prove their claims; it further requires that property, attempted to be conveyed by him to defraud those creditors, should be treated as his property; if it be treated as the property of the bankrupt, the assignee, by virtue of his title, and as the trustee of the creditors, has a right to the aid of this court in this case. Cases might occur, and may be supposed, in which the possession of the title of the bankrupt might not be, of itself, sufficient. Without more, it would not enable the assignee to sue in his own name, upon any chose in action, not negotiable, nor to maintain a real action upon a disseisin, or for a mere right of the bankrupt. In this view, it may be considered as not designed to limit, or give a construction to the preceding clause, which vests the property, but as superadding thereto some other rights and powers, which would not otherwise have attached to its ownership. This, according to the best opinion I can form, is the real purpose and effect of the clause, and in this aspect it does not interfere with the right of the plaintiff to maintain this bill. In my opinion, the property fraudulently conveyed, is to be deemed property of the bankrupt, and was, by the decree, vested in the assignee. This enables him to maintain the bill. He has no occasion to resort to the subsequent clause, for any enlargement of his powers, and the design of that clause was not to deprive the assignee, of rights which attach to the ownership of the property, in the capacity in which he holds it, but to enlarge his powers and confer rights upon him which, on the ordinary principles of law, do not belong to a mere voluntary assignee.

The next cause of demurrer is the bar, arising from the last clause of the eighth section of the bankrupt act, which is as follows: "No suit at law or in equity shall, in any case, be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of action shall first have accrued." The bill avers that the fraud, which is the present cause of action, was discovered within two years before the filing of the bill. Long before the statute was enacted, the same words, in other statutes of limitations, had received a construction, both in England and America, at law and in equity, and in the courts of the United States as well as in other tribunals. The cases in the English chancery are very numerous, and it is not necessary to detail them. They are collected by Mr. Lewin, in his treatise on trusts (page 616). In this country, also, there are decisions in most of the courts of the last resort, one of the earliest of which is First Massachusetts Turnpike v. Field, 3 Mass. 201, followed by Homer v. Fish, 1 Pick. 435, and Welles v. Fish, 3 Pick. 74. See, also, Sherwood v. Sutton [Case No. 12,782]; Mitchell v. Thompson [Id. 9,669]. The settled statutes of limitation do not run, in cases of fraud while it is secret. Some difference of opinion has existed, respecting the grounds for this rule; but, in my judgment, the most reasonable and sensible ground is, that, substantially, the title to avoid the transaction does not arise until the fraud is known. This is the practical and just view, and to this I assent; and hold that when the cause of action is a fraud, the action does not accrue while its cause is concealed; and this interpretation I must consider to have been within the intention of the legislature, when it used the same language, which had acquired a settled meaning to that effect. It is objected, however, that this bill does not contain any averment that the cause of action was fraudulently concealed. But it does state a case of secret fraud, and it would be difficult to distinguish this from fraudulent concealment. A secret, or what is the same thing, concealed fraud, when it is the cause of action, is a fraudulent concealment of the cause of action.

Another cause of demurrer was, that the repeal of the bankrupt law put an end to the complainant's right to sustain this bill; but it is clear the saving clause in the repealing act covers the case. The demurrer is overruled.

[NOTE. For decision dismissing the bill, see next following case, No. 2,437.]