## ADAMS et al. v. ALBANY et al.

No. 731.

United States District Court
S. D. California, N. D.

Nov. 5, 1948.

James W. Harvey, of San Francisco, Cal., for plaintiffs.

Ray W. Hayes, of Fresno, Cal., for defendant Southeran Realty Co.

Claude L. Rowe, of Fresno, Cal., for defendant Edward Payson Gregory.

Samuel B. Stewart, Jr., and Christopher M. Jenks both of San Francisco, Cal., for defendants Bank of America, K. H. McIsaacs, Reid E. Titus, Cesare Pierini, Julius B. Nielsen, and Robert J. Parkinson.

Courtney L. Moore, of San Francisco, Cal., for defendants William C. Albany, Richard M. Vail, and Wade J. Howells.

YANKWICH, District Judge.

Forty-one plaintiffs have joined in a Complaint for damages for a civil conspiracy alleged to have been entered into by the defendants to defraud them as members of a class—that is, veterans of World War II. As to each of the plaintiffs, two causes of action are set forth. One seeks to recover a sum of money alleged to have been paid as the purchase price for a home in excess of the maximum selling price and a reasonable attorney's fees.

The other seeks to recover damages claimed to have been suffered by the various plaintiffs by reason of faulty construction and failure to comply with the plans and specifications.

The following are stated as elements of damages in various amounts: cost of demolition and construction of homes purchased, cost of securing housing accommodations during the period of demolition and reconstruction, and general damages.

In all, the amount sought to be recovered, exclusive of attorney's fees, is $1,289,869.

### I.

#### The Basis of Jurisdiction.

The first cause of action, as to each of the plaintiffs, is based on Section 7(c) of the Veterans' Emergency Housing Act of 1946,[1] which reads, in part, as follows:

"The district courts shall have jurisdiction of criminal proceedings for violation of section 5 of this Act, and, concurrently with State and Territorial courts, of all other proceedings under this section."[2]

Section 7(d) of the Act reads:

"If any person selling housing accommodations violates a regulation or order prescribing a maximum selling price, the person who buys such housing accommodations may, within one year from the date of the occurrence of the violation, bring an action for the amount by which the consideration exceeded the maximum selling price, plus reasonable attorney's fees and costs as determined by the courts."[3]

The second cause of action, as to each of the plaintiffs, is admittedly grounded on common law principles and is not within the jurisdiction of this court, unless we take jurisdiction of the first cause of action grounded on the express provisions of Section 7(d) of the Act.

After entertaining jurisdiction of a federal claim and a non-federal claim,

---

[1] 60 Stats. Ch. 268, p. 207 et seq., 50 U.S.C.A.Appendix, § 1821 et seq.

[2] 60 Stats.Ch. 268, Sec. 7(c), p. 211.
[3] 60 Stats.Ch. 268, Sec. 7(d), p. 211.

we may render judgment on the non-federal claim, even if we conclude, on the facts, that no recovery could be had on the federal claim. None the less, if the federal claim cannot be entertained *in the first place* and we dismiss it for that reason, the second claim must fall with it.[4]

The defendants have moved to dismiss the Complaint upon the ground that none of the causes of action states a claim. As to the first cause of action, which we shall call the federal cause of action, it is urged that it is barred by the explicit provisions of Section 7(d) of the Act.[5]

The action was instituted on June 8, 1948. The purchases by each of the plaintiffs were made more than one year prior to that date. Anticipating the assertion of the year limitation, the plaintiffs aver in their Complaint that the maximum selling price for the houses was concealed by the defendants from the forty-one plaintiffs by a series of acts and representations, which will be referred to with some detail further on in the discussion. Discovery is alleged as of February, 1948.

This skeletonized outline of the proceedings posits the question which we are to determine—whether this court, by reason of lapse of time, has lost jurisdiction of the first group of forty-one statutory causes of action.

## II.

The Jurisdictional Minimum Requirement.

We start with the fact that the statute under discussion was passed for the benefit of veterans of World War II. It was an act of munificence on the part of a grateful Government towards those who served in World War II, which expressed itself in the form of assistance in the purchase of housing accommodations. While thus extending its largess to these veterans, the Government sought to protect them against exploitation by providing that sales to them should be made at a maximum selling price established by the regulations of the Federal Housing Administration.[6] It also gave to these veterans the right to bring an action for the amount of the excess paid over the maximum sale price, within one year from the occurrence of the violation.[7] As the forty-one first causes of action are brought under this Housing Act, they are causes of action arising under a statute of the United States. This being the case, unless the act establishing the action specifically grants to the district courts jurisdiction *regardless of the amount involved*, the general rule which makes our jurisdiction dependent upon the presence of both a federal question and a jurisdictional minimum of three thousand dollars applies.[8]

None of the demands for damages under the group of forty-one statutory actions is in the amount of three thousand dollars. Absent the jurisdictional minimum, the claims must fail, for I do not find in the statute any words which confer jurisdiction on the federal court of this type of action irrespective of the amount involved. On the contrary, the statute gives to the federal courts concurrent jurisdiction with the state courts. And, in providing that an action may be brought in the district court, it does not say that it may be instituted there *regardless of the amount of overpayment involved*. In this respect, the statute does not differ from others in which the Congress, while establishing a right of action, does not, at the same time, confer jurisdiction on the District Court irrespective of the amount involved.

Such actions may be brought in any court. However, although they arise under the laws of the United States, the jurisdictional minimum must also be present before we can take jurisdiction.[9]

4 Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Southern Pacific Company v. Van Hoosear, 1934, 9 Cir., 72 F.2d 903, 911, 912; Zalkind v. Scheinman, 1943, 2 Cir., 139 F.2d 895. See, 28 U.S.C.A. § 1338(a).

5 60 Stats.Ch. 268, Sec. 7(d), p. 211.

6 60 Stats.Ch. 268, Sec. 3(b), p. 209.

7 60 Stats.Ch. 268, Sec. 7(d), p. 211.

8 28 U.S.C.A. § 1332.

9 Clark v. Paul Gray, Inc., 1939, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; and see my opinion in Allen v. Clark, 1938, D.C.Cal., 22 F.Supp. 898.

## III.

### Statutes Creating Liability.

■ But there is a more serious infirmity to the Complaint. We are dealing with a statute which creates liability. And a limitation in such statute *affects the right.* As said in a leading case:

"The liability and the remedy are created by the same statutes, and *the limitations of the remedy are* therefore *to be treated as limitations of the right.*" [10] (Emphasis added.)

And there is no jurisdiction to entertain the action after the expiration of the period within which it might have been brought. This, because we are dealing *with a statute of creation* and not *with a statute of limitation.*[11] The rule has been well stated by the United States Court of Appeals for the Tenth Circuit, speaking through Judge Bratton:

"Ordinarily, a statute of limitation does not confer any right of action, but merely restricts the time within which the right finding its source elsewhere may be asserted. It is not a matter of substantive right. It neither creates the right nor extinguishes it. It affects only the remedy for the enforcement of the right. And unless it affirmatively appears from the face of the complaint that the cause of action is barred by the applicable statute, limitation must be presented by special plea in defense.

"But here, section 205(e) [50 U.S.C.A. Appendix, § 925(e)] creates a new liability, one unknown to the common law and not finding its source elsewhere. It creates the right of action and fixes the time within which a suit for the enforcement of the right must be commenced. *It is a statute of creation, and when the period fixed by its term has run, the substantive right and the corresponding liability end.* Not only *is the remedy no longer available, but the right of action itself is extinguished. The commencement of the action within the time is an indispensable condition of the liability.* Cf. The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Midstate Horticultural Co., Inc., v. Pennsylvania R. Co., 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96.

"In a case of this kind brought under the provisions of a statute creating the right of action where none previously existed and qualifies the right of action by requiring that the suit to enforce it be brought within a limited time, it must affirmatively appear from the face of the complaint that the action was commenced within the prescribed time. * * * Insofar as it related to the recovery of damages, the complaint was fatally defective in its failure to show that the suit was commenced within one year after the cause of action accrued, and therefore the denial of the motion to that extent constituted error." [12] (Emphasis added)

■ The expiration of the time in such case destroys the right.[13] The statute under consideration is of this character, as clearly appears from its nature and its his-

---

[10] The Harrisburg, 1886, 119 U.S. 199, 214, 7 S.Ct. 140, 147, 30 L.Ed. 358.

[11] Midstate Horticultural Co. v. Pennsylvania R. Co., 1943, 320 U.S. 356, 64 S. Ct. 128, 88 L.Ed. 96.

[12] Matheny v. Porter, 1946, 10 Cir., 158 F.2d 478, 479, 480.

[13] Finn v. United States, 1887, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (*action in Court of Claims against the Government*); A. J. Phillips Co. v. Grand Trunk Western R. Co., 1916, 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (*action by shipper under the Hepburn Act*, 49 U.S.C.A. § 16); William Danzer & Co. v. Gulf & S. I. R. Co., 1925, 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126 (*action by shipper under the Interstate Commerce Act*, 49 U.S.C.A. § 16(2); John F. Jelke Co. v. Smietanka, 1936, 7 Cir., 86 F.2d 470 (*action by taxpayer under Internal Revenue Act* 26 U.S.

C.A. Int.Rev.Acts, page 324 *to recover overpayment of Income Taxes*); Thompson v. Taylor, 1945, D.C.Fla., 62 F.Supp. 930 (*action under Emergency Price Control Act*, 50 U.S.C.A.Appendix, §§ 901 et seq., 925(c); Awad v. Durant, 1946, D. C.Fla., 69 F.Supp. 921 (*action under Emergency Price Control Act*, 50 U.S.C. A.Appendix, § 901 et seq.); and see, Joint Council etc. v. Delaware etc. Ry., 1946, 2 Cir., 157 F.2d 417, 420 (*action to enforce an award under Railway Labor Act*, 45 U.S.C.A. § 152(p, q); Bomar v. Bogart, 1947, 2 Cir., 159 F.2d 838 (*action to recover damages resulting from alleged conspiracy to violate Emergency Price Control Act*, 50 U.S.C.A.Appendix, §§ 904(b), 925(a, b, e):

"On the expiration of the * * * period, it was as if liability had never existed." William Danzer & Co. v. Gulf &

tory. It confers special benefits upon a group who could not claim the particular benefits under any other statute relating to them or statutes passed especially for veteran groups of other Wars, such as the Civil War, the Spanish-American War, or World War I.

It follows that the action was not instituted in time as to any of the plaintiffs.

## IV.

### Concealment of Injury.

Can the allegations of concealment overcome this defect?

 A right of action is the right to pursue a judicial remedy. The cause of action is the entire state of facts that give rise to an enforceable claim. Statutes of limitation do not begin to run until after a cause of action accrues.[14] Not until then may an action be maintained. Institution prior to that time warrants dismissal on the ground of prematurity.[15]

 In fraud, the statute of limitations does not begin to run until after discovery.[16] In a statute creating liability, the period for the institution of the action cannot be enlarged or waived by agreement.[17] Nor can it be overcome by allegations of fraud or concealment which prevented discovery. The logic of the situation is clear. Statutes of limitation are mere statutes of repose. They affect the remedy only. The passage of time does not destroy the obligation. It still exists. But because it is the policy of the law not to give its aid to the enforcement of stale demands, it will reject an action when the expiration of a statutory period for its institution is pleaded.

 By parity of reasoning, equity will decline, under the doctrine of laches, to grant relief, even after a lapse of time short of the statutory period, if injury result.

 In case of ordinary limitations, a person may, by his voluntary act, waive their benefit. Or the law will deny the privilege of urging them to one who, by his fraudulent acts, has prevented another from asserting his right.

But the same considerations do not obtain when we are dealing with a statute which calls into being the obligation from which the action stems and which decrees that it shall be instituted within a limited period only.

 Here the passage of time destroys the very right which is the basis of the action. And neither agreement, waiver, nor fraud can serve to keep alive the expiring right or to recapture it after it has become extinct. Fraud, at best, merely works an estoppel to assert a limitation. And the

S. I. R. Co., 1925, 268 U.S. 633, 636, 45 S.Ct. 612, 613, 69 L.Ed. 1126.

And see, the language of Mr. Justice Holmes in Davis v. Mills, 1904, 194 U.S. 451, 454, 24 S.Ct. 692, 48 L.Ed. 1067.

This is akin to the rule that in statutes waiving governmental immunity to suit, the courts are "confined to the letter of the statute" (The Isonomia, 1933, 2 Cir., 285 F. 516, 520), because the limitation of the remedy is also the limitation of the right. See my opinion in Uarte v. United States, 1948, D.C.Cal., 7 F.R.D. 705, and cases cited in Notes 5, 6, and 7. And as to this, there can be no waiver either expressed or by implication: Munro v. United States, 1933, 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633; Wallace v. United States, 1944, 2 Cir., 142 F.2d 240.

[14] 1 Am.Jur., Actions, Secs. 2, 3; Bradford v. Southern Railway Co., 1904, 195 U.S. 243, 248-250, 25 S.Ct. 55, 49 L.Ed. 178; Reading Co. v. Koons, 1926, 271 U.S. 58, 46 S.Ct. 405, 70 L.Ed. 835; Hudson Motor Car Co. v. Hertz, 1941, 6 Cir., 121 F.2d 326, 330, 331; Matheny v. Porter, 1946, 10 Cir., 158 F.2d 478, 479. And see, Yankwich, Handbook of California Pleading and Procedure, 1926, Secs. 140-148; 54 C.J.S., Limitations of Actions, §§ 183, 184.

[15] 1 Am.Jur., Actions, Sec. 63; Carter v. Carter Coal Co., 1936, 298 U.S. 238, 287, 288, 56 S.Ct. 855, 80 L.Ed. 1160; Yankwich, op. cit., Sec. 187; Kirk v. Culley, 1927, 202 Cal. 501, 507, 261 P. 994; Southern Pacific Co. v. Catucci, 1941, 47 Cal.App.2d 596, 598, 118 P.2d 494.

[16] 54 C.J.S., Limitations of Actions, §§ 183, 184; Yankwich, op. cit., Sec. 140; Simpson v. Dalziel, 1902, 135 Cal. 599, 67 P. 1080; Victor Oil Co. v. Drum, 1920, 184 Cal. 226, 193 P. 243; Fleishhacker v. Blum, 1940, 9 Cir., 109 F.2d 543, 548.

[17] Midstate Horticultural Co. v. Pennsylvania R. Co., 1943, 320 U.S. 356, 64 S.Ct. 128, 88 L.Ed. 96.

Supreme Court has ruled explicitly that estoppel will not avail against an expiration of right:

"The inquiry traditionally is cast in this mold regardless of whether the ultimate question concerns such varied problems as the propriety of invoking the *lex fori* rather than the *lex loci, of waiving the defense or estopping the defendant from asserting it, or of extending the period of limitation after it has once lapsed.*" [18] (Emphasis added)

## V.

### Fraudulent Concealment.

■ Concealment is not enough even when dealing with a pure statute of limitation. One who seeks to toll it must explain why due diligence could not have led to discovery. The principle is thus stated in a leading federal case:

"A general allegation of ignorance at one time and of knowledge at another are of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. Carr v. Hilton, 1 Curt. 230.

"*The fraud intended by the section which shall arrest the running of the statute must be one that is secret and concealed, and not one that is patent or known.* Martin, Assignee, v. Smith, 1 Dill. 85, and the authorities cited.

" 'Whatever is notice enough to excite attention and put the party on his guard

---

[18] Midstate Horticultural Co. v. Pennsylvania R. Co., 1943, 320 U.S. 356, Note 4, 64 S.Ct. 128, 129, 88 L.Ed. 96. The Supreme Court has applied this principle consistently to all cases in which it was sought to continue the benefit of an expired right by estoppel. Rejecting such attempt under the patent laws, the court in Scott Paper Co. v. Marcalus Mfg. Co., 1945, 326 U.S. 249, 256, 257, 66 S.Ct. 101, 105, 90 L.Ed. 47, after referring to the doctrine of the cases cited in Notes 13 and 17, supra, said:

"It is thus apparent that the patent laws preclude the patentee of an expired patent and all others including petitioner from recapturing any part of the former patent monopoly; for those laws dedicate to all the public the ideas and inventions embodied in an expired patent. They do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all. The rights in the invention are then no longer subject to private barter, sale, or waiver. Cf. Phillips v. Grand Trunk [Western] R. Co., 236 U.S. 662, 35 S.Ct. 444, 59 L. Ed. 774; Midstate Horticultural Co. v. Pennsylvania R. Co., 320 U.S. 356, 361, 64 S.Ct. 128, 131, 88 L.Ed. 96; Brooklyn [Sav.] Bank v. O'Neil, 324 U.S. 697, 704, 65 S.Ct. 895, 900 [89 L.Ed. 1296]. It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. *For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest.* * * * The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power. The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member." (Emphasis added).

The Supreme Court of Tennessee has so interpreted the statute under consideration here:

"The statute was in force when the appellant purchased this property on October 5, 1946. The right of action thereunder dated from this date. Suit was filed herein on October 16, 1947, or more than one year after the cause of action accrued. *This statute authorized a civil suit by buyers against sellers who violate maximum sales prices.* It is the only statute or regulation we know of wherein such a suit is authorized. *This statute which prescribes a right of action also prescribes the time within which this right may be exercised.* That is, the buyer 'may, within one year from the date of the occurrence of the violation, bring an action * * *'. *To say that the right 'may' be exercised within the prescribed time is to preclude the idea that it may be exercised at some later time.*" Amos v. Carson, 1948, Tenn.Sup., 210 S.W.2d 677, 679. (Emphasis added).

and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it.' Kennedy v. Greene, 3 Myl. & K., 722. 'The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge of it.' Angell, Lim., sect. 187 and note.

*"A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it."* [19] (Emphasis added)

A leading California case, much quoted and followed, sums up the rule in this language:

" 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud,' within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must themselves be pleaded. *It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them,—as that they were done in secret,* or were kept concealed; and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged, and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts."* [20] (Emphasis added)

The facts relied on to overcome the limitation must show not only the time and circumstances of discovery, but also that he who pleads it is not at fault in failing to discover the fraud sooner. This can only be achieved by bringing to the attention of the court facts which show that the facts concealed were of a character which placed their discovery beyond the reach of the plaintiff.

## VI.

### Concealment of Cause of Action.

Here another principle should be adverted to upon which plaintiffs rely to save their cause of action,—namely, that fraudulent concealment of a cause of action suspends a statute of limitation until discovery.[21] But, in order to bring the principle into play, the concealment must relate to the basic facts from which the cause of action springs. Illustrative is the concealment of the fact that the injury of an employee was caused not by the act of a co-

[19] Wood v. Carpenter, 1879, 101 U.S. 135, 141, 25 L.Ed. 807.

[20] Lady Washington Consol. Co. v. Wood, 1896, 113 Cal. 482, 486, 45 P. 809, 810; and see, Pickett v. Aglinsky, 1940, 4 Cir., 110 F.2d 628; Original Mining & Milling Co. v. Casad, 1930, 210 Cal. 71, 74, 290 P. 456; Consolidated Reservoir & Power Co. v. Scarborough, 1932, 216 Cal. 698, 16 P.2d 268; Davis v. Rite-Lite Sales Co., 1937, 8 Cal.2d 675, 681, 67 P. 2d 1039; Hobart v. Hobart Estate Co., 1945, 26 Cal.2d 412, 441, 159 P.2d 958; Shapiro v. Equitable Life Assur. Co., 1946, 76 Cal.App.2d 75, 88, 172 P.2d 725.

[21] 54 C.J.S., Limitation of Actions, § 206; 34 Am.Jur., Limitation of Actions, Sec. 231; Sherwood v. Sutton, 1828, Fed. Cas.No.12,782, 5 Mason 143 (*the earliest Federal Case on the subject in which Mr. Justice Story, sitting at Circuit, formulated the doctrine in the United States*); Bailey v. Glover, 1874, 21 Wall. 342, 22 L.Ed. 636; Rosenthal v. Walker, 1884, 111 U.S. 185, 189, 4 S.Ct. 382, 28 L.Ed. 395; Traer v. Clews, 1885, 115 U.S. 528, 537, 6 S.Ct. 155, 29 L.Ed. 467; Kimball v. Pacific Gas & Electric Co., 1934, 220 Cal. 203, 30 P.2d 39; Saulsbury Oil Co. v. Phillips Petroleum Co., 1944, 10 Cir., 142 F.2d 27, 40; Holmberg v. Armbrecht, 1946, 327 U.S. 392, 296, 297, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719.

employee, which was compensable under a State Employer's Liability Act, St.Cal. 1917, p. 854, as amended, and would not give a right of action against the employer for damages, but by the employee of another company between whom and the plaintiff the relationship of employer and employee did not exist and against whom a general action for damages would lie.[22]

The same principle has been applied when an insurer fraudulently obtained the possession of a policy of insurance from the personal effects of the insurer prior to the appointment of an administrator,[23] and where a party to an oil contract concealed the fact that residue gasoline was being sold to its wholly-owned subsidiary and not to an arms-length purchaser.[24] Concealment of the injury or of the facts constituting the injury, or of the identity of the person who inflicted it is not enough.[25] In the present case, the overcharge was the injury. Its concealment was not a concealment of the cause of action.

## VII.

### Concealment of Injury.

The plaintiffs, in their argument, have designated Paragraphs 15, 17 and 18 of the first cause of action—which are carried over into all the subsequent causes of action—as containing the allegations of fraud, which, they insist, are adequate to excuse the delay in instituting the action. Rather than summarize them, we reproduce them in full, adding, for the sake of continuity, the intervening Paragraph 16. They read:

"By the terms of said conspiracy and agreement, and in furtherance thereof, defendants, in concert, applied for and received priorities to construct those certain homes in Southern Homesites Tract under the Second War Powers Act of 1942, as amended [50 U.S.C.A.Appendix, § 631 et seq.], and Veterans' Emergency Housing Act of 1946, [50 U.S.C.A.Appendix, § 1821 et seq.], and PR 33 and HEPR 5, promulgated thereunder, in the names of plaintiffs, who were veterans of World War II. Defendants, acting in concert, did wilfully sell said houses so built to plaintiffs for more than the maximum sales prices permitted for such houses under PR 33 and HEPR 5, in violation of the Second War Powers Act, as amended, and the Veterans' Emergency Housing Act of 1946. It was a part of said conspiracy and agreement that the objects thereof would be accomplished as follows:

"Defendants would sell and cause to be sold to plaintiffs, as veterans of World War II, houses and lots in the said Southeran Homesites Tract, hereinbefore more particularly described, and would cause plaintiffs as veterans to sign applications in blank for priorities under PR 33 and HEPR 5 to build such houses, and would cause and did cause such applications to be so written that it would appear that plaintiffs were not buying said houses, but having them constructed, and would cause and did cause said applications to be submitted to the Federal Housing Administration, and would conceal, and did conceal, from said plaintiffs, the maximum sales prices for said houses, fixed by said Federal Housing Administration, pursuant to PR 33 and HEPR 5, and would sell, and did cause to be sold, to plaintiffs, said houses at prices in excess of said maximum sales prices so fixed.

"Defendant Bank of America National Trust and Savings Association in concert with its codefendants, in furtherance of said common plan, as aforesaid, did wilfully undertake to, and did, finance the purchase of said homes by plaintiffs, as aforesaid, on a 100% basis, knowing full well that said loans to said plaintiffs were for amounts in excess of said maximum sales prices, in violation of said Second War

---

[22] Kimball v. Pacific Gas & Electric Co., 1934, 220 Cal. 203, 30 P.2d 39.

[23] Kicklighter v. New York Life Ins. Co., 1944, 5 Cir., 145 F.2d 548, 549.

[24] Saulsbury Oil Co. v. Phillips Petroleum Co., 1944, 10 Cir., 142 F.2d 27, 40.

[25] Gale v. McDaniel, 1887, 72 Cal. 334, 13 P. 871; Lightner Mining Co. v. Lane, 1911, 161 Cal. 689, 120 P. 771, Ann.Cas. 1913C, 1093; Staples v. Zoph, 1935, 9 Cal.App.2d 369, 49 P.2d 1131; Bathke v. Rahn, 1941, 46 Cal.App.2d 694, 116 P. 2d 640; Parker v. County of Los Angeles, 1943, 62 Cal.App.2d 130, 134, 144 P.2d 70.

Powers Act, as amended, and the Veterans' Emergency Housing Act, and in wilful disregard of the duties and obligations imposed on defendant bank as a recognized lending agency, by the provisions of Title III of the Servicemen's Readjustment Act of 1944, as amended by Public Law 268, 79th Congress [38 U.S.C.A. § 694 et seq.], and regulations promulgated thereunder governing Guaranty or Insurance of Loans to veterans.

"The facts of said transactions were concealed from plaintiffs by said defendants by false and fraudulent representations and concealments, more particularly hereinafter set forth.

"XVI. In pursuance of said common plan, as aforesaid, and in furtherance thereof, defendants in concert represented to plaintiffs that the selling prices of said houses and lots were below the maximum ceiling prices fixed therefore by the Federal Housing Administration. These representations were false and fraudulent, and defendants, in each of them, knew said representations were false and fraudulent. Said representations were made by defendants as part of said preconceived plan, and to induce plaintiffs, as veterans of World War II, to act thereon. Plaintiffs, believing and relying upon said false and fraudulent representations, did act thereon, to their damage.

"XVII. In pursuance of said common plan, as aforesaid, and in furtherance thereof, defendants conspired to conceal and did conceal from plaintiffs those certain representations made by defendants to the Federal Housing Administration, as hereinabove set forth, while purporting to act as agents for plaintiffs. Defendants also conspired to conceal and did conceal from defendants the maximum sales prices fixed by the Federal Housing Administration on said houses and lots purchases by said plaintiffs from said defendants. Defendants' acts and conduct in concealing said facts from plaintiffs was fraudulent and calculated to injure and deceive plaintiffs. Defendants, and each of them, knew said

acts of concealment were fraudulent and made to induce plaintiffs to purchase said houses from said defendants at prices in excess of maximum sales price fixed therefor. Plaintiffs were induced to act and did act without knowledge of said facts so concealed by said defendants.

"XVIII. As a consequence of said defendants' false and fraudulent representations and acts of concealment, hereinabove mentioned, plaintiffs were induced to and did purchase homes from said defendants in said Southeran Homesites Tract at prices greatly in excess of the maximum ceiling prices placed thereon by the Federal Housing Administration; said maximum ceiling prices placed on said homes, as aforesaid, were concealed from plaintiffs by said defendants. Plaintiffs did not learn the maximum sales prices placed on said homes, as aforesaid, until the month of February, 1948."

The alleged conspiracy is not the basis of the action. It is resorted to in order to make all participants in the act liable.[26] The violation of the right from which the action stems is the sale at a price in excess of that fixed by the Federal Housing Administration, pursuant to priority regulation 33 and Housing Expediter Priority Regulation 5, promulgated under the Veterans' Emergency Housing Act of 1946.[27] The damage suffered as the result of the violation of this right is the cause of action.[28] Indeed, counsel for the plaintiffs in their memorandum write:

"In each of the forty-one first counts of the plaintiffs' complaint, they have alleged the fraudulent concealment of the maximum selling price fixed for said houses from the plaintiffs by a series of acts and representations by defendants and the discovery thereof by plaintiffs in the month of February, 1948. (Paragraphs XV, XVII and XVIII of 1st count of plaintiffs' complaint.)"

So, reduced to its ultimate terms, the concealment charged—to use the language just stated—is that "of the maximum sale price fixed". And the series of acts and

---

[26] Frost v. Hanscome, 1926, 198 Cal. 550, 246 P. 53; Wells v. Lloyd IV, 1936, 6 Cal.2d 70, 82, 83, 56 P.2d 517.

[27] 60 Stats. Ch. 268, Secs. 3(b), 7(d), pp. 209, 211.

[28] Mox, Incorporated, v. Woods, 1927, 202 Cal. 675, 262 P. 302.

representations by which the concealment was accomplished resulted in sales made at prices "below the maximum selling prices fixed therefore." (Par. 16, quoted above)

This, in the last analysis, is all the concealment charged. Other allegations such as the concealment of the fact that the houses had already been built by the defendants and the representation that the plaintiffs were not buying the houses, but having them constructed, are merely the means of achieving the only and ultimate wrong for which the action can, if at all, be maintained under Section 7(d) of the Act,[29] namely, sale at an excessive price.

■■■ The maximum price was fixed by the Federal Housing Administrator under the statutes and regulations already referred to. His action was the official act of a public officer charged with a duty by the Congress. The records of his office were open to inspection by persons who, like the plaintiffs, were interested parties. Plaintiffs are charged with knowledge of the statutes and regulations, the benefits of which they claim, and which, in their complaint, they, themselves, have set forth as the foundation for their claim. It is not alleged that any act was done by the defendants *to prevent access* to the records in the office of the Federal Housing Administration, which would disclose the price of each house. And, just as the complaint merely alleges concealment without setting forth any facts which would amount to concealment as a matter of law, in like manner, does the complaint aver discovery, without reciting the circumstances which led to it or which prevented discovery sooner. Nor does it allege the facts showing that the plaintiffs are not at fault for having failed to discover the fraud sooner. So that, even giving full scope to the allegations, and, conceding—for the sake of argument only—that fraudulent concealment would toll a statute of this character, the facts in the case *do not,* in their legal effect, show the type of conceal-

ment which would toll even a statute of limitations.

■■■ For they show conclusively that the factors required to achieve such result are absent. As said by Judge Wilbur:

"Mere ignorance of the injury complained of, or of the facts constituting such injury, will not prevent the running of the statute."[30]

And what is more, the doctrine does not even apply to statutes creating liability. (See Parts II, III, and IV of this Opinion)

■■■ It follows that the first forty-one causes of action do not state a claim and that this court has lost jurisdiction to entertain any of them by reason of the provisions of Section 7(d) of the Act.[31]

■■■ As the second group of causes of action is nonstatutory and is not within our jurisdiction if the first group is not, they must also fall.[32]

The motion to dismiss is, therefore, granted.

---

[29] 60 Stats. Ch. 268, Sec. 7(d), p. 211.

[30] Foster & Kleiser Co. v. Special Site Sign Co., 9. Cir., 1936, 85 F.2d 742, 752; and see, cases cited in Notes 20, 21 and 25; Burnham Chemical Co. v. Borax Consol. Ltd., 9 Cir., 1948, 170 F.2d 569.

[31] 60 Stats. Ch. 268, Sec. 7(d), p. 211.

[32] See cases in Note 4.