David P. HOULIHAN et al., Plaintiffs,

v.

ANDERSON–STOKES, INC., et al., Defendants.

Civ. A. No. 75–0555.

United States District Court, District of Columbia.

June 28, 1977.

See also, D.C., 434 F.Supp. 324.

**1320**

James Hamilton, Martha Jane Shay, Michael I. Sanders, Philip L. Cohan, Washington, D.C., for plaintiffs.

Jacob A. Stein, James F. Jordan, Fred W. Geldon, Henry R. Berliner, Washington, D.C., for defendants.

## MEMORANDUM OPINION OF UNITED STATES

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiffs' motion to amend the complaint in order to rectify certain pleading deficiencies in Count I which the Court specified in its Memorandum issued herein on May 11, 1977. After due consideration of plaintiffs' motion and defendants'[1] opposition thereto, the Court has decided to grant the motion to amend the complaint.[2] The Court has concluded further that plaintiffs have properly pleaded a case of fraudulent concealment of their cause of actions specified in Count I, by virtue of the amendment to the complaint. Accordingly, the Court will vacate its prior orders granting defendants' motions for judgment on the pleadings as to Count I.

## I. BACKGROUND

Count I alleges that defendants sold to plaintiffs certain limited partnership interest in November 1972 without filing a registration statement with the Securities and Exchange Commission, in alleged violation of §§ 5, 12(1), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77*l*(1), and 77*o*. Defendants' position at the time of sale was apparently that the securities were exempt from the registration requirements of the Act, pursuant to the exemption for "private offerings" found in § 4(2), 15 U.S.C. § 77d(2). The Supreme Court has stated, however, that the applicability of the private offering exemption is determined by "the need of the offerees for the protections afforded by registration. . . . [and whether the offerees are] shown to have access to the kind of information which registration would disclose." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 127, 73 S.Ct. 981, 985, 97 L.Ed. 1494 (1953). *See General Life of Missouri Investment Co. v. Shamburger*, 546 F.2d 774 (8th Cir. 1976). Plaintiffs maintain that defendants fraudulently concealed from them "access to the kind of information which registration would disclose."

Under section 13 of the Act, 15 U.S.C. § 77m, plaintiffs' cause of action is subject to a one-year statute of limitations. Plaintiffs admit that they knew in November 1972 that the securities in question had not been registered. Plaintiffs also admit that, even taking into account certain tolling agreements made between plaintiffs and defendants, suit was not instituted until after the one-year statute of limitations had expired. Plaintiffs seek to escape the ef-

---

1. The defendants involved are Arthur Content, Anderson-Stokes, Inc., Phyllis W. Stokes, Paul Curtis Stokes, Jr., Daniel G. Anderson, Margot Anderson, Leethan Research Corp. (formerly known as Donatelli, Rudolph & Schoen, Inc., and also known as Rudolph Schoen, Inc.), Trevor Gardner, Louis Donatelli, Malcolm Rudolph, and Stephen Schoen.

2. This disposition of the motion to amend the complaint moots plaintiffs' alternative motions for entry of judgment pursuant to Fed.R.Civ.P. 54(b) or for certification pursuant to 28 U.S.C. § 1292(b).

fect of the statute, however, by alleging, as noted above, that the facts underlying their cause of action were fraudulently concealed from them by defendants; thus, the plaintiffs allege, the statute of limitations should not be considered to have run, under the federal tolling doctrine, "until plaintiff[s] discover[ed], or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans*, No. 75–1032, 553 F.2d 220 at 228 (D.C. Cir. 1977).

On January 28, 1977, at a hearing on defendants' motions for judgment on the pleadings, this Court ruled that the allegations of fraud contained in Count I had not been alleged with the specificity required by Fed.R.Civ.P. 9(b). Appropriate written orders granting defendants' motions were entered on February 7, 1977. In denying plaintiffs' motion for reconsideration, this Court wrote in the aforementioned Memorandum of May 11 that plaintiffs' allegations of fraudulent concealment failed because:

> [N]owhere in Count I or in the paragraphs referenced therein do plaintiffs specify exactly what information, or even what type of information, had been concealed from them.

In light of the Court's disposition of the motion for reconsideration, the Court did not consider defendants' additional contention that, in any case, the statute of limitations on Count I had expired.

## II. THE MOTION TO AMEND THE COMPLAINT

■ By their proposed amendment, plaintiffs would add the following sentence to ¶ 25 of the Third Amended Complaint, which is incorporated by reference into Count I:

> The information any prudent investor would desire to have before investing— which should have been included in a registration statement had one been filed with the Securities and Exchange Commission—and the material representations and omissions plaintiffs were subjected to are specified in paragraphs 43– 50 of this Complaint.

This Court has previously indicated its intention to deny any further motions for amendment of plaintiffs' complaint herein: Plaintiffs have had four opportunities already. Nevertheless, the proposed amendment at issue makes it clear that the flaw identified by the Court in its Memorandum of May 11 was entirely technical: Plaintiffs simply failed to refer to and incorporate into Count I the specific allegations which form the basis of numerous other counts of the complaint.

In light of the liberal amendment policies of Fed.R.Civ.P. 15(a), the Court is thus convinced that granting leave to amend the complaint herein would serve the ends of justice. *See Freedman v. Beneficial Corp.*, 406 F.Supp. 917, 925 (D.Del.1975). In this connection, the Court notes that defendants, each of whom is named in other Counts herein, will not be prejudiced by amendment: Since plaintiffs are adding no new factual allegations to the complaint, the amendment is not one which would serve to apprise defendants belatedly of the claims against them.

The Court wishes to make it clear, however, that its decision to exercise its discretion in favor of amendment should not be taken as an invitation for plaintiffs to seek further amendments, either with respect to Count IV, which is disposed of by Memorandum and Order issued of even date, or as to any other portion of the complaint.

## III. APPLICATION OF THE FEDERAL TOLLING DOCTRINE

■ Because of the Court's original disposition on specificity grounds of defendants' motions for judgment on the pleadings and plaintiffs' motion for reconsideration, the Court did not previously have an opportunity to consider carefully defendants' claim that plaintiffs' cause of action is barred by the applicable statute of limitations. In light of this Court's decision to allow plaintiffs to amend the complaint, the Court now turns to a full consideration of the statute of limitations question, as raised in defendants' original motion for judgment on the pleadings.

Section 13 of the Act, 15 U.S.C. § 77m, provides that "[n]o action shall be maintained to enforce . . . a liability created under section [12(1)] of this title, unless brought within one year after the violation upon which it is based." Plaintiffs allege that the sales of the limited partnership units at issue were made to plaintiffs in November 1972. Plaintiffs allege further that in October 1974, each of the moving defendants signed agreements tolling the applicable statute of limitations for six months. Each of the moving defendants was subsequently sued in April 1975, with the exception of defendant Content, who was named as a defendant in July 1975. Defendants maintain that since the tolling agreements were not signed until nearly two years after the sale of the securities involved, the one-year statute of limitations bars plaintiffs' claim contained in Count I of the Third Amended Complaint.

Plaintiffs seek to escape the effect of the statute of limitations by invoking the federal tolling doctrine. That doctrine, which has been the law in the federal courts "since the case of *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1875) [states] that in cases involving elements of fraud neither a statute of limitations nor the equitable doctrine of laches can be said to begin to run until the fraud is or should have been discovered." *Vanderboom v. Sexton*, 422 F.2d 1233, 1240 (8th Cir.), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). *See Fitzgerald v. Seamans*, No. 75–1082, 553 F.2d 220 at 228–229 (D.C. Cir. 1977). Plaintiffs point out that Count I of their Third Amended Complaint is grounded in fraud: The gist of their allegations is that defendants fraudulently misrepresented that registration of the limited partnership units was unnecessary and that plaintiffs had been provided access to all relevant information concerning the partnership which would have been included in a registration statement. Thus, plaintiffs claim, their case presents an appropriate situation for application of the tolling doctrine, which has been applied in the past in actions brought under section 12(1) of the Act. *See Katz v. Amos Treat & Co.*, 411 F.2d 1046 (2d Cir. 1969); *Competitive Asso-*

*ciates, Inc. v. Fantastic Fudge, Inc.*, 58 F.R.D. 121 (S.D.N.Y.1973); *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890 (D.Me.1971).

The Court is convinced that the federal tolling doctrine should be applied to the instant case. The authority most directly in support of the Court's conclusion is *Dyer v. Eastern Trust and Banking Co., supra.* In *Dyer*, the plaintiff sued under section 12(1), alleging that defendants made false assurances to plaintiff that the sale of the securities there in question did not require registration under the Securities Act. As in this case, the sale in question had been made more than a year before suit was instituted. Judge Gignoux indicated that the case would have been appropriate for the application of the federal tolling doctrine but for the absence of a crucial element:

> The rule depends, however, upon a clear allegation of fraudulent concealment or fraud . . . and fraud 'means that the wrongdoer has contrived to deceive his victim' . . .. The . . . cases establishing the federal tolling principle all entailed explicit, conscious deception, concealment and bad faith on the part of the defendants.

*Id.* at 901. Since the plaintiff in *Dyer* had failed, despite two opportunities, to allege "the knowing and intentional misrepresentation necessary to make out a case of fraudulent concealment sufficient to toll the statute of limitations," Judge Gignoux granted defendants' motion to dismiss. The clear implication of *Dyer*, however, is that in a case brought under section 12(1) which alleges fraudulent concealment on the part of the defendants who have allegedly failed to register securities, application of the federal tolling doctrine is appropriate. The instant case is just such a controversy: Plaintiffs allege not only that the representations in question were false, but that they were grounded in the "fraudulent concealments of [the] defendants." Third Amended Complaint, ¶ 39.

Defendants cite the case of *Suckow Borax Mines Consolidated, Inc. v. Borax Consolidated, Ltd.*, 81 F.Supp. 301 (N.D.Cal. 1948), *aff'd*, 185 F.2d 196 (9th Cir. 1950),

*cert. denied*, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951), for the proposition that mere assurances of legality do not prevent the statute from running. Since plaintiffs allege that defendants assured them that registration of the securities in question was not necessary, plaintiffs have alleged, according to defendants, a mere "assurance of legality" insufficient to toll the statute. Put another way, defendants' contention seems to be that plaintiffs' allegations of fraud are not sufficient to toll the statute because the alleged misrepresentations were ones of law rather than fact. There are two answers to this contention. First, the Supreme Court has stated, in a case decided after *Suckow*:

> It is no answer to say, as respondent does, that the representations alleged were of law and not of fact and therefore could not justifiably be relied on by petitioner. Whether they could or could not depends on who made them and the circumstances in which they were made. . . . Such questions cannot be decided at this stage of the proceedings.

*Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 235, 79 S.Ct. 760, 763, 3 L.Ed.2d 770 (1959). Second, plaintiffs in this case have alleged more than a fraudulent misrepresentation of law; they have also alleged that defendants fraudulently assured them that plaintiffs had been "'provided access to all relevant information concerning the Partnership which should have been included in a registration statement had one been filed with the Securities and Exchange Commission.'" Third Amended Complaint, ¶ 37. *See id.*, ¶ 39. In other words, plaintiffs claim that material *facts* were hidden from them. By implication, plaintiffs claim that defendants' fraudulent assurance of legality was made possible by defendants' fraudulent concealment of material facts.

Defendants also cite the case of *Adams v. Albany*, 80 F.Supp. 876 (S.D.Cal.1948), for the proposition that the federal tolling doctrine may be applied only if the fraudulent concealment which is alleged relates "to the basic facts from which the cause of action springs." *Id.* at 883. But *Adams* is readily distinguished from the case at bar. Plaintiffs in *Adams*, forty-one World War II veterans, alleged that defendants concealed from them the maximum selling prices at which houses could be sold to them under applicable federal law and regulations. Plaintiffs' suit was filed after the applicable statute of limitations had run, and the court refused to invoke the federal tolling principle. The court found that the facts allegedly concealed by defendants were readily available and in the public domain, inasmuch as the relevant maximum price was fixed

> by the Federal Housing Administrator under [federal] statutes and regulations . . . . His action was the official act of a public officer charged with a duty by the Congress.

*Id.* at 886. The court added:

> It is not alleged that any act was done by the defendants *to prevent access* to the records in the office of the Federal Housing Administration, which would disclose the price of each house.

*Id.* (emphasis in original). In contrast, the critical allegation in the instant case is that defendants falsely and fraudulently assured plaintiffs that they had been "'*provided access* to all relevant information concerning the Partnership which should have been included in a registration statement . . . .'" Third Amended Complaint, ¶ 37 (emphasis added). *See id.*, ¶ 39.

The Court will therefore vacate its Orders granting defendants' motions for judgment on the pleadings as to Count I.[3] The

---

3. Defendant Content asserts a separate ground applicable only to him in his motion for judgment on the pleadings. Content alleges that plaintiffs waited four months after discovery of the alleged fraud to make a tolling agreement with various defendants, including Content. Plaintiff then failed to sue Content until more than three months after the tolling agreement expired. Relying on several cases applying state law, defendant contends that plaintiffs' seven-month period of inaction was too long a period, as a matter of law, to prevent application of the statute. The case of *Reat v. Illinois Central R.R.*, 47 Ill.App.2d 267, 197 N.E.2d 860 (1964), is typical of the cases relied on by defendant Content. *Reat* differs from this case

**1324**

Court wishes to make it clear that its decision reflects no opinion whatsoever not only as to the merits of plaintiffs' allegations of fraud, but also as to whether plaintiffs exercised due diligence in discovering the alleged fraud. Applying the holding of this circuit's recent opinion in *Fitzgerald, supra,* it is clear that plaintiffs will have to establish that their failure to discover the alleged fraud earlier than the summer of 1974 was not due to a lack of diligence on their part. In *Fitzgerald,* the district court granted summary judgment for all of the named defendants on the ground, *inter alia,* that plaintiff had not exercised due diligence in discovering the alleged fraud perpetrated against him and thereafter instituting suit. The court of appeals affirmed the district court's judgment as to all but one of the defendants, and remanded the case for further factual development as to the remaining defendant. The instant case, of course, is not before this Court on motions for summary judgment, but instead on consideration of motions for judgment on the pleadings. It may well be that at some future time in these proceedings the defendants will be able to show, either on motion for summary judgment or at trial on the merits, that plaintiffs did not exercise due diligence in discovering the alleged fraud and protecting their legal rights. But the issue of diligence has yet to be presented to the Court, and, for now, plaintiffs have made allegations sufficient to withstand defendants' motions. As one court has observed:

> Plaintiffs continue to have the burden of showing that defendants were indeed engaged in acts of fraudulent concealment . . . as well as the burden of showing that lack of diligence was not a factor in failure to discover their cause of action. However, for purposes of withstanding a motion to dismiss, plaintiffs' pleadings are sufficient in their allegations.

*Puttkammer v. Stifel, Nicholaus & Co.,* 365 F.Supp. 495, 498 (N.D.Ill.1973).

An Order in accordance with the foregoing will be issued of even date herewith.

in two critical aspects, however. First, the alleged fraudulent concealment in *Reat* was "discovered," by plaintiffs' own admission, before the original statutory period had run; thus, the court found that "the alleged 'lulling' period, if there were any, expired long before the statute barred the action and there was ample opportunity for [plaintiff] to avail of any legal rights he had before the bar of the statute fell." 197 N.E.2d at 866. The instant case, by contrast, presents an entirely different set of facts: The alleged fraudulent concealment was discovered long after the original limitations period had run. More importantly, *Reat* and the other cases cited by defendant Content apply state law; none involve the federal tolling doctrine. Cases interpreting that doctrine make it clear that "time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans,* No. 75–1032, 553 F.2d 220 at 228 (D.C. Cir. 1977). *See Puttkammer v. Stifel, Nicholaus & Co.,* 365 F.Supp. 495, 497 (N.D.Ill.1973). Accepting plaintiffs' allegations of fraud and discovery thereof as true for the purposes of this motion only, the statute would have begun to run upon discovery, some time in the summer of 1974. Taking into account the intervening six-month tolling agreement, plaintiffs' action against Content, filed in July 1975, was clearly instituted within the one-year limitations period.